ACCEPTED
03-15-00011-CV
4962340
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/20/2015 11:51:45 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00011-CV

**IN THE THIRD COURT OF APPEALS OF TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/20/2015 11:51:45 PM
JEFFREY D. KYLE
Clerk

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G. Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

**BRIEF OF APPELLANT**

David Rogers
Texas Bar No. 24014089
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, TX 78746
Firm@DARogersLaw.com

ATTORNEY FOR APPELLANT

**ORAL ARGUMENT NOT REQUESTED**

No. 03-15-00011-CV

---

**IN THE THIRD COURT OF APPEALS OF TEXAS**

---

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; PaAuction.com; mela Cirkiel; Helen G. Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

---

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

---

**BRIEF OF APPELLANT**

---

David Rogers
Texas Bar No. 24014089
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, TX 78746
Firm@DARogersLaw.com

ATTORNEY FOR APPELLANT

---

**ORAL ARGUMENT NOT REQUESTED**

---

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT:**

Clare Trevarthen

**COUNSEL:**

David Rogers
SBN 24014089
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, TX 78746
(512) 923-1836
(512) 777-5988 [Facsimile]
Firm@DARogersLaw.com

**APPELLEES:**

**Nationstar Mortgage LLC, Pamela Cirkiel, Auction.com, Helen G. Kinneman, Jeremiah McClain and Shamica Thomas**

**COUNSEL:**

John W. Ellis
B. David L. Foster
Locke Lord LLP
600 Congress Avenue
Suite 2200
Austin, TX 78701
(512) 305-4700
(512) 305-4800 [Facsimile]
jellis@lockelord.com
dfoster@lockelord.com

## TABLE OF CONTENTS

Identity of Parties and Counsel………………………………………………..iii

Table of Contents…………………………………………………………..iv

Index of Authorities……………………………………………….........v

Statement of the Case……………………………………………………1

Statement on Oral Argument…………………………………………..3

Issues Presented…………………………………………………………..3

Argument & Authorities…..…………………………………………13

Standard of Review……..…………………………………….........13

Prayer………………………………………………........................18

Certificate of Service………….…………………….....................19

Certificate of Compliance………….……………………………20

# INDEX OF AUTHORITIES

**TEXAS SUPREME COURT CASES**

*State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235),* 2013 Tex. LEXIS 67 (Tex. 2013)…...…………13-14

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742 (Tex. 2003)……….….14, 15


**TEXAS COURTS OF APPEAL**

*Martin v. New Century Mortg. Co.*, 377 S.W.3d 79 (Tex. App. Houston 1st Dist. 2012)……………………………………………………………14, 15

**CODES**

Civil Practices and Remedies Code Chapter 12……….………………..1
Texas Property Code 51.0075(e) …………………………….…………1
Texas Property Code 51.0001(3) …………………………….…………1
Texas Property Code 51.0025……………………………….…………1
Texas Local Government Code 192.007…….…………………………1
Texas Property Code §51.007 and 51.0001(3)……………………….11

**RULES**

Tex. R. App. P. 39.1…………………………………………………….3

**TO THE HONORABLE THIRD DISTRICT COURT OF APPEALS:**

Appellant, Clare Trevarthen, hereby pleads that the honorable Court of Appeals reverse the judgment of the Williamson County District Court #26 and remand for further proceedings, and in support of this motion she shows the Court:

**Statement of the Case**

1.01.  Appellant is Mrs. Clare Trevarthen (hereinafter "Trevarthen" or "Appellant").

1.02.  Appellees are Nationstar Mortgage LLC (hereinafter "Nationstar"); Auction.com; Pamela Cirkiel (hereinafter "Cirkiel"); Helen G. Kinneman (hereinafter "Kinneman"); Jeremiah McClain ((hereinafter "McClain" and Shamica Thomas (hereinafter "Thomas.")  These two entities and four individuals are referred to hereinafter, collectively, as "Appellees".

1.03.  Appellant filed suit March 3, 2015 against Appellee Nationstar Mortgage LLC seeking a judgment that Appellee had violated the terms of the deed of trust, and had committed further violations of Civil Practices and Remedies Code Chapter 12, Texas Property Code 51.0075(e) and 51.0001(3) and 51.0025, Texas Local Government Code 192.007. Appellant sought a declaration that the substitute trustee's deed executed June 13, 2011 was void.

1.04. On April 3, 2014 Appellant amended her petition to add Appellees Auction.com, Jeremiah McClain, Pamela Cirkiel, Shamica Thomas and Helen G. Kinneman as defendants. Appellant sought judgment that the additional defendants had committed similar violations as those committed by Nationstar and in addition committed business disparagement (Auction.com), tortuous interference with contract (Cirkiel, Thomas and McClain) and sought a declaration that the June 13, 2011 substitute trustee's deed was void.

1.05. On August 29, 2014, Appellee Nationstar Mortgage filed its traditional and no-evidence motion for summary judgment, followed by a response by Appellant and Reply by Appellee.

1.06. On October 7, 2014, the Court heard argument by counsel for Nationstar and Clare Trevarthen, and invited additional briefing.

1.07. Clare Trevarthen's counsel filed a sur-reply on October 7. Nationstar filed no additional briefing.

1.08. On November 10, 2014 the trial court issued its order granting summary judgment.

1.09. On December 3, 2014 Appellant filed her notice of appeal with the trial court.

**Statement Regarding Oral Argument**

2.01. Appellant believes that this brief and record adequately presents the facts and legal arguments involved in this appeal and that oral argument would not aid the decisional process significantly. *See* TEX. R. APP. P. 39.1. Should the Court conclude that oral argument would be helpful, however, Appellant stands ready and requests the opportunity to participate.

**Issues Presented**

3.01. Did District Court #26 properly grant a no-evidence and traditional motion for summary judgment on all claims regarding a void foreclosure when genuine issues of material fact were disputed, including, but not limited to, the identity of the owner of the Note and Deed of Trust and the identity of the mortgage servicer?

**Facts**

4.01. Clare Trevarthen purchased the property from the previous owner on December 27, 2006. In order to finance the purchase, Clare Trevarthen executed an interest-only Adjustable Rate Note in the original principal amount of $136,000.00 (the "Note"). The Lender on the Note was Meridias Capital, Inc., a Nevada Corporation. *See* Clerk's Record at 548-552; 372-382. *See also* Appendix 1, Court record, Declaration of Kristen Trompisz in

support of Motion for Summary Judgment filed by Locke Lord on behalf of Nationstar (as successor in the entirety to Aurora Loan Services LLC) in 11-603-C368 in the Williamson County 368th District Court on November 5, 2013.[1], [2]

4.02. What happened next is unclear. That lack of clarity around material facts concerning the payments made, and the identity of parties entitled to enforce the Note and its associated Security Interest Lien makes summary judgment inappropriate.

4.03. Despite the confusion, Clare Trevarthen worked hard to clarify the situation repeatedly, by sending letters, including sending qualified written requests to various attorneys and entities that at different times held themselves out to be holders of rights in the Note. A modification agreement was reached, and at least 17 payments were made under that agreement, though apparently Appellees lost more than a dozen of those payments – payments for which Clare Trevarthen has receipts, which she presented to the Court. *See* Clerk's Record 661-679, 682.

4.04. These facts are not controverted.

---

[1] The versions vary only in their endorsements or lack of same.
[2] The Court is requested, pursuant to T.R.E. 201(d) to take judicial notice of the excerpt from the prior case, not for the truth of the matter asserted, but for the fact that it was asserted. ("A Court shall take judicial notice if requested by a party and supplied with the necessary information.")

4.05. The confusion about who owned what when is evidenced in the attachments to the motion for summary judgment and in the transcript of the Motion for Summary Judgment hearing. *See* Reporter's Record at 18-31. *See also* Clerk's Records at 544-691.

4.06. There appear to be at least three (3) "tracks" purporting to show transfers of rights in the Note and Deed of Trust, each of which is supported by different and mutually inconsistent documents in the Williamson County Records, in claims and admissions by alleged agents of alleged holders of rights, by the MERS system records, and by the alleged copy of the Note produced with the Motion for Summary Judgment, which is inconsistent in turn with the alleged copy of the Note produced by the same parties in previous litigation in the same courthouse (though a different District Court.)

4.07. **Track #1 - MERS**

4.08. According to MERS, as documented in its milestone report, the changes went as follows:

4.09. On 12-28-2006, Meridias Capital registered the loan.

4.010. On 2-14-2007, Meridias Capital transferred the "beneficial rights" and designated Aurora Loan Services LLC as the "new investor."

4.011. On 6-18-2007, Meridias Capital transferred the "flow servicing rights" and designated Aurora Loan Services FSB as the "new servicer," and Aurora Loan Services LLC as the "new subservicer."

4.012. On 6-21-2007, Aurora Loan Services LLC transferred the "flow servicing rights" and designated Lehman Brothers Holdings Inc. as the "new servicer," effective 6-20-2007.

4.013. On 7-2-2007, Aurora Loan Services LLC transferred the "beneficial rights" and designated Bank of America, National Association as trustee as the "new investor."

4.014. On 10-15-2007 UBS Warburg Real Estate Securities Inc., designated as "warehouse" "release[d] the interim funder interests."

4.015. On 12-10-2008, Aurora Loan Services LLC transferred the "beneficial rights" and designated ALS- Wilmington Trust Co as the "new investor."

4.016. On 6-3-2011, Aurora Loan Services LLC transferred the "seasoned servicing rights" from Lehman Brothers Holdings Inc. to Aurora Loan Services LLC.

4.017. On 6-8-2011, Aurora Loan Services LLC reported that the foreclosure was complete as of 6-6-2011.

4.018. On 2-9-2012, Aurora Loan Services LLC reversed the foreclosure.

4.019. Also on 2-9-2012, Aurora Loan Services LLC reported that the new subservicer was Aurora Bank FSB.

4.020. Also on 2-9-2012, Aurora Bank FSB reported that the foreclosure was complete as of 6-7-2011.

4.021. Even if all these allegations by MERS were consistent with the available other records (and they aren't), this trail at the very least raises the question of who foreclosed and when – and, of course, whether the party that conducted the foreclosure was empowered to do so.

4.022. **Track #2 – Communication from Parties claiming the Note**

4.023. This track begins, of course, with the Note itself, which was made out to Meridias Capital Inc.

4.024. This track quickly diverges from the MERS track, as it introduces Florez Consulting Company as the party that assigns the Meridias Capital servicing rights from itself (which it never had) to Aurora Loan Services on 2-16-2007. *See* Clerk's Record at 387.

4.025. On 12-15-2008, Michael J. Schroeder, P.C. claims that there are two Aurora Loan Services entities with interests in the Note – one is the owner and holder and the other is the servicer.

4.026. On July 26, 2010, Aurora LLC claims to be a debt collector, and states that Lxs 2007-6 is the mortgagee.

4.027. By September 13, 2010, Michael J. Schroeder, P.C. claims that Aurora LLC is a mortgage servicer for MERS, that the other Aurora entity is the owner and holder, and that Michael J. Schroeder, P.C. is the substitute trustee.

4.028. Fifteen days later, on September 28, 2010, in a letter responding to a QWR (Qualified Written Request, an information request letter authorized under federal lending laws) to Aurora, Kahrl Wutscher LLP identifies the owner of the Note as LaSalle Bank National Assoc. as Trustee, and states that Aurora Loan Services FSB is the loan servicer, master servicer and/or sub-servicer of the loan.

4.029. Then, on 4-18-2011, another QWR response letter tells us that the owner of the debt is Wilmington Trust Company, in trust for Lehman XS Trsut Mortgage Pass-Through Certificates, Series 2007-6, an entity that is never mentioned or explained before or after. Moreover, there is no explanation for how Lehman XS Trsut Mortgage Pass-Through Certificates, Series 2007-6 acquired the Note, or who they acquired the Note from.

4.030. Instead of an explanation, we get an announcement in the form of the notice of substitute trustee's sale that Aurora Loan Services, LLC is the servicer and ALS Inc. in the mortgagee on 5-3-2011. No explanation of how the Note was transferred to Aurora LLC from Wilmington or Lehman.

4.031.  More confusion follows on the trustee's deed, which claims that the Aurora entities have switched positions, and the LLC is now the mortgagee, and the purchaser at foreclosure.

4.032.  On July 6, 2011, a month after the foreclosure, in a letter to Clare Trevarthen, Aurora Loan Services claims it was transferring the Note to Aurora Bank FSB effective July 21, 2011.  *See* Clerk's Record at 389-390.

4.033.  Of course, if there is a Note to transfer, that necessarily concedes the continuing existence of the loan, which requires that the foreclosure not have taken place, because the price recorded on the foreclosure, $157,110.55, was equivalent to the whole amount claimed on the Note at the time.

4.034.  On June 15, 2012, more than a year after the alleged foreclosure (which would have fulfilled and cancelled the Note, had it actually occurred), Aurora Bank FSB notified Clare Trevarthen that it was transferring the servicing rights on the "satisfied" loan to Nationstar Mortgage.  No mention was made in that letter of the satisfaction of the Note or of any foreclosure.  *See* Clerk's Record at 392.

4.035.  Of course, if there are servicing rights to transfer, that necessarily concedes the continuing existence of the loan, which requires that the foreclosure not have taken place, because the price recorded on the

foreclosure, $157,110.55, was equivalent to the whole amount claimed on the Note at the time.

4.036. **Track #3 – Williamson County Public Records**

4.037.  This track begins not with the Note itself, which was made out to Meridias Capital Inc., but with the Deed of Trust which was recorded shortly after the contemporaneous execution of the Note, 12-29-2006.  *See* Clerk's Record at 437-466.

4.038.  The Williamson County records, unlike the MERS and private correspondence records, show no change until the March 31, 2011 recordation of a MERS assignment of Meridias Capital's interest to Aurora Loan Services LLC.  *See* Clerk's Record at 468-469.

4.039.  However, the May 3, 2011 Notice of Trustee's Sale states that Aurora Loan Services LLC is merely the mortgage servicer, and that Aurora Loan Services (presumably the Inc.) is the mortgagee.  Since the names are different, repeatedly on the document, it must be assumed that the entities are also different.  The Notice, then, shows some evidence of transfer of ownership between the recorded assignment and the date of the Trustee's Sale.

4.040. This matters because Texas Property Code §51.007 and 51.0001(3) require that the mortgage servicer who sells of behalf of the mortgagee have

a notice sent to the mortgagor by the CURRENT mortgagee before the mortgage servicer can foreclose. If the identity of the CURRENT mortgagee changes, the power to foreclose evaporates until the new notice is sent to the mortgagor.

4.041. The public policy purpose obviously is to prevent the chaos and confusion that this case showcases.

4.042. On June 7, 2011, according the Substitute Trustee's Deed, Aurora LLC foreclosed and bought the property itself at auction. The Trustee's Deed is unreliable, however, as it state, among other inaccuracies, that the original Note was "payable to the order of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR NEVADA CORPORATION," a clearly erroneous statement. *See* Clerk's Record at 471-474. *Compare* Clerk's Record at 548-552; 372-382. *See also* Appendix 1, Court record, Declaration of Kristen Trompisz in support of Motion for Summary Judgment filed by Locke Lord on behalf of Nationstar (as successor in the entirety to Aurora Loan Services LLC) in 11-603-C368 in the Williamson County 368th District Court on November 5, 2013. All three versions of the Note[3] state that the Note is payable to the order of Meridias Capital, Inc. MERS is not mentioned at all in any version

---

[3] The versions vary only in their endorsements or lack of same.

of the Note, and there is no record anywhere of any payment due to, or made to, MERS in the entire history of the payments and demands on this Note.

4.043. **Track #4 – The Note**

4.044. This track begins, of course, with the Note itself, which was made out to Meridias Capital Inc.

4.045. The original note was of course unendorsed.

4.046. The version of the note produced in 2013 in conjunction with the MSJ was also unendorsed, though it had an unsigned stamp suggesting that it might be endorsed by Meridias Capital Inc. at some future time.

4.047. The version of the Note attached to this MSJ is endorsed in blank on the Meridias Capital stamp by a person previously undisclosed, who is identified as "AVP."

4.048. Interestingly, Notes produced previously in response to QWRs in prior litigation are different from any of these three. The Note produced by by defendants in the prior litigation includes an allonge claiming that Calleane Wakefield of Meridias Capital specifically endorsed to Lehman Bros FSB. *See* Exhibit 1 attached. This is referred to on the Response to the MSJ, p. 11. *See* Clerk's Record at 492. This is deliberately omitted because it conflicts with the forged and later-added endorsement by the same

Calleane Wakefield of Meridias Capital, which was absent from the 2013

Motion for Summary Judgment.

4.049. The allonge is not attached to the version presented with this MSJ.

Trevarthen's counsel objected to the admission of the incomplete Note at the

Summary Judgment hearing. The Court admitted the document over that

objection, without explanation or testimony explaining the incomplete

document. *See* Reporter's Record at 10-12.

## ARGUMENT & AUTHORITIES

**District Court #26 granted a summary judgment motion improperly in the face of disputed material questions of fact, including the identity of the owner and holder of the Note and Deed of Trust and the identity of the "mortgage servicer" entitled to enforce under Texas Property Code Chapter 51.**

5.01. A recent Texas Supreme Court case laid out the standard for review of

grants of summary judgment motions.

> We review a grant of summary judgment *de novo. Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 422 (Tex. 2010). When the trial court does not specify the grounds for its ruling, a summary judgment will be affirmed if any of the grounds advanced by the motion are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R.

CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The non-movant has no burden to respond to or present evidence regarding the motion until the movant has carried its burden to conclusively establish the cause of action or defense on which its motion is based. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

*State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235),* 2013 Tex. LEXIS 67, 8-9 (Tex. 2013)

5.02.  The no-evidence standard is slightly different.

Because King Ranch's summary judgment motion was, in part, a no-evidence motion, we consider the evidence in the light most favorable to the non-movant. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506, 46 Tex. Sup. Ct. J. 21 (Tex. 2002); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208, 45 Tex. Sup. Ct. J. 470 (Tex. 2002). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing  a directed verdict. *See, e.g., Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 350 (Tex. App.-Houston [1st Dist.] 2001, no pet.); *Blackburn v. Columbia Med. Ctr. Of Arlington Subsidiary*, 58 S.W.3d 263, 270 (Tex. App.-Fort Worth 2001, pet. denied); *Mansfield v. C.V. Bent Tree Apartment, L.P.*, 37 S.W.3d 145, 149 (Tex. App.-Austin 2001, no pet.); *Espalin v. Children's Med. Ctr.*, 27 S.W.3d 675, 683 (Tex. App.-Dallas 2000, no pet.); *Barraza v. Eureka Co.*, 25 S.W.3d 225, 231 (Tex. App.-El Paso 2000, pet. denied); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet. denied).

Accordingly, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711, 40 Tex. Sup. Ct. J. 846 (Tex. 1997). "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only

evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." Id. (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960)). Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Wal-Mart*, 92 S.W.3d at 506. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63, 26 Tex. Sup. Ct. J. 383 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms.*, 953 S.W.2d at 711.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-751 (Tex. 2003)

5.03.   Additionally, a no-evidence challenge must be specific about what

areas there is no evidence for.

"A no-evidence challenge that only generally challenges the sufficiency of the non-movant's case and fails to state specific elements is fundamentally defective and insufficient to support summary judgment as a matter of law." *Mott v. Red's Safe & Lock Servs., Inc.*, 249 S.W.3d 90, 98 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  However, the homeowners did not bring any defect in the motion to the attention of the trial court and, more importantly, do not claim on appeal that the motion failed to comply with the specificity requirement. *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 805 (Tex. App.—Dallas 2008, pet. denied) (noting that defect in no evidence motion for summary judgment may be raised for first time on appeal, but declining to consider issue where parties did not raise defect before appellate court); *cf. Kahng v. Verity*, No. 01-07-00695-CV, 2008 Tex. App. LEXIS 5775, 2008 WL 2930195 (Tex. App.—Houston [1st Dist.] July 31, 2008, no pet.) (assuming without deciding that complaint that no-evidence summary

judgment was facially defective was preserved for review).

*Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 85 (Tex. App. Houston 1st Dist. 2012)

5.04.  In this grant of summary judgment, the primary question is "did Aurora Loan Services, LLC have the power to foreclose on July 7, 2011?" A second, important question, on which the sole witness for Nationstar Mortgage, Kristen Trompisz apparently perjured herself,[4] is what is the relationship between Aurora and Nationstar, and does Nationstar actually have any rights in this property at all.

5.05.  In order to answer that question, the Court must discern who owned the Note on that date, who held the Note on that date, to whom the Deed of Trust was assigned, and, if Aurora claimed to foreclose through a "mortgage servicer" power under Texas Property Code § 51.007, was Aurora a party properly endowed with that power on that date by the owner and holder of the Note?

5.06.  The answer to all those questions is no, and there is "more than a scintilla of probative evidence to raise a genuine issue of material fact."

---

[4] The most generous explanation for her conflicting testimony is that she is horribly confused about the most basic facts about her employer.  In any event, the testimony in her two affidavits about this property and these companies, given less than a year apart, and presented by the same lawyers and the same law firm absolutely conflicts.  Given the unreliability of the conflicting statements, and the lack of explanation for those conflicts, the testimony of this witness of this vital point must be disregarded.

5.07. There is, admittedly, some evidence in each direction, and it is possible that at a bench trial or a jury trial, a fact-finder might conceivably weigh the evidence and decide as the trial court did. But that is not the function of a motion for summary judgment. A motion for summary judgment is for deciding cases where there are no disputed material facts. It is impossible to review the evidence before the trial court, including the many various and contradictory admissions by parties other than the Plaintiff claiming to have rights and interests and the power to transfer rights and interests, and find that there is no question of the material facts.

5.08. Even the attorney for Nationstar Mortgage could not be certain at the hearing which entity was which – in no small part because three entities are named Aurora – Aurora Loan Services Inc, Aurora Loan Services LLC, and Aurora Bank FSB. *See* Reporter's Record at 13, line 23 to 14, line 6.

5.09. In summary, there is more than sufficient evidence attached to the response to the motion for summary judgment to raise a scintilla of evidence, and that evidence in the form of an affidavit from Defendant's primary witness is utterly unreliable and must be discarded. In fact, the evidence produced by Defendants alone creates salient fact issues, as the two notices of transfer of the rights in the Note after the alleged foreclosure date indicate that neither Aurora FSB or LLC nor Nationstar believed that there

had been a foreclosure, as such a foreclosure would have extinguished the Note, and there would have been no servicing rights in the Note to transfer. In view of these facts, it was clear error for the trial court to grant summary judgment.

## PRAYER

Appellant Trevarthen respectfully requests that, as disputed issues of material fact remain to be resolved, this Court reverse the no-evidence and traditional summary judgment of the District Court in all things and remand for further action consistent with its opinion.

RESPECTFULLY SUBMITTED,


_/s/ David Rogers_
DAVID ROGERS
Law Office of David Rogers
State Bar No. 24014089
1201 Spyglass Drive, Suite 100
Austin, TX 78746
(512) 923-1836
(512) 201-4082 (fax)
DARogers@aol.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellant's Brief was served upon counsel of record for Appellees on this 20th day of April, 2015 via this Court's online filing system.

B. David L. Foster
Locke Lord LLP
600 Congress Avenue
Suite 2200
Austin, TX 78701
(512) 305-4700
(512) 305-4800 [Facsimile]
dfoster@lockelord.com


＿＿/s/＿David Rogers＿＿＿＿＿＿
David Rogers
SBN 24014089
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, TX 78746
(512) 923-1836
(512) 777-5988 [Facsimile]
Firm@DARogersLaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify that this document contains 3,909 words.

_/s/   David Rogers_

David Rogers
SBN 24014089
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, TX 78746
(512) 923-1836
(512) 777-5988 [Facsimile]
Firm@DARogersLaw.com

No. 03-15-00011-CV

# IN THE THIRD COURT OF APPEALS OF TEXAS

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G. Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

## APPENDIX

David Rogers
Texas Bar No. 24014089
Law Office of David Rogers
1201 Spyglass Suite 100
Austin, TX 78746
Firm@DARogersLaw.com

ATTORNEY FOR APPELLANT

No. 03-15-00011-CV

---

# IN THE THIRD COURT OF APPEALS OF TEXAS

---

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

---

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

---

## APPENDIX

| ITEM 1 | Judgment of the Trial Court | CR page 729-730 |
| ITEM 2 | Endorsed Adjustable Rate Note | CR page 372-382 |
| ITEM 3 | Unendorsed Adjustable Rate Note | CR page 548-552 |
| ITEM 4 | Declaration of Clare Trevarthen | CR page 661-679 |
| ITEM 5 | Additional Declaration of Clare Trevarthen | CR page 682 |
| ITEM 6 | Notice of Assignment, Sale, or Transfer | CR page 387 |
| ITEM 7 | Letter to Clare Trevarthen July 8, 2011 | CR page 389-390 |
| ITEM 8 | Letter to Clare Trevarthen June 15, 2012 | CR page 392 |
| ITEM 9 | Corporate Assignment of Deed of Trust | CR page 468-469 |

ITEM 10     Substitute Trustee's Deed                    CR page 471-474

ITEM 11     Notice of Appeal                             CR page 731-737

ITEM 12     Excerpts from hearing October 7, 2014        RR page 18-31

ITEM 13     Declaration of Kristen Trompisz

ITEM 14     Exhibit chart

ITEM 15     Allonge to Promissory Note

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 1

ITEM 1      Judgment of the Trial Court                CR page 729-730

CAUSE NO. 14-0187-C26

| | | |
|---|---|---|
| CLARE TREVARTHEN | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | 26th JUDICIAL DISTRICT |
| NATIONSTAR MORTGAGE LLC, | § | |
| AUCTION.COM, JEREMIAH | § | |
| MCCLAIN, PAMELA CIRKIEL, | § | |
| SHAMICA THOMAS, HELEN G. | § | WILLIAMSON COUNTY, TEXAS |
| KINNEMAN | § | |
| *Defendants.* | § | |

## FINAL ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER

On this day, the Court considered the Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever (the "Motion") filed by Defendant Nationstar Mortgage LLC ("Nationstar") and the Objections to Plaintiff's Summary Judgment Evidence filed by Nationstar ("Nationstar's Objections"). After careful consideration of the Motion and Nationstar's Objections. any timely responses thereto, the competent evidence, all pleadings properly before the Court, the arguments of counsel, if any, and all other matters properly before the Court, the Court rules as follows:

Nationstar's Motion is GRANTED, and Plaintiff Clare Trevarthen shall take nothing by her claims against Defendant Nationstar Mortgage LLC.

Nationstar's Objections are SUSTAINED and Plaintiff's Exhibit A, Exhibit B, Exhibit D, Exhibit E, Exhibit F, Exhibit G, Exhibit H, Exhibit K, Exhibit L, Exhibit N, Exhibit O, Exhibit P, Exhibit Q, Exhibit R, Exhibit S, Exhibit T, Exhibit X, Exhibit AA, Exhibit BB, and Exhibit CC are stricken from the summary judgment record.

**FILED**

at 8:45 o'clock A M

NOV 14 2014

PAGE 1 OF 2

District Clerk, Williamson Co., TX

FINAL ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S TRADITIONAL
AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER
AUS:0103793/00150:560185v1

Plaintiff's claims against the Nationstar are SEVERED from this lawsuit. It is further ordered that the Clerk of the Court shall assign the severed cause the cause number

*14-1096 C2le* .

It is further ordered that all costs are taxed against Plaintiff.

This judgment finally disposes of all claims by Plaintiff against Defendant Nationstar Mortgage LLC and is appealable.

SIGNED this the *10* day of *November*, 2014.

_____
BILLY RAY STUBBLEFIELD, DISTRICT JUDGE

AGREED AS TO FORM:

_____
B. David L. Foster
  Texas Bar No. 24031555
John W. Ellis
  Texas Bar No. 24078473
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Facsimile)
ATTORNEYS FOR DEFENDANT
NATIONSTAR MORTGAGE LLC

_____
David Rogers
  Texas Bar No. 24014089
1201 Spyglass, Suite #100
Austin, Texas 78746
(512) 923-1836
(512) 201-4082 (Facsimile)
ATTORNEY FOR PLAINTIFF CLARE
TREVARTHEN

FINAL ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER     PAGE 2 OF 2
AUS:0103793/00150:560185v1

730

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 2

ITEM 2      Endorsed Adjustable Rate Note          CR page 372-382

# ADJUSTABLE RATE NOTE

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

DECEMBER 27, 2006             SALT LAKE CITY              UTAH
    [Date]                          [City]                [State]

1202 MAHOGANY LANE, CEDAR PARK, TEXAS 78613
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $136,000.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is MERIDIAS CAPITAL, INC., A NEVADA CORPORATION                                                              .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.250   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the  1st    day of each month beginning on  FEBRUARY 1  , 2007  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1, 2037            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at DEPT. 9664, LOS ANGELES, CALIFORNIA 90084-9664

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 927.76              . This amount may change.          ** See attached Interest Only Note Addendum.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 1 of 5

Form 3520 1/01
DocMagic *CForms* 800-649-1362
*www.docmagic.com*

372

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 1st day of JANUARY, 2012 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000 percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 13.250 % or less than 7.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.250 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
*www.docmagic.com*

373

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of       15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                  Page 3 of 5

Form 3520 1/01
*DocMagic eForms* 800-649-1362
*www.docmagic.com*

374

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 4 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
*www.docmagic.com*

375

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Clare Trevarthen_ (Seal)
CLARE TREVARTHEN                    -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

PAY TO THE ORDER OF:
WITHOUT RECOURSE

MERIDIAS CAPITAL, INC., A NEVADA CORPORATION

BY: _Calleane Wakefield_____

ITS: Calleane Wakefield - AVP

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 5 of 5

Form 3520 1/01
DocMagic *e*Forms 800-649-1362
www.docmagic.com

376

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: <span style="background:black;color:red">REDACTED</span>7296

Date: DECEMBER 27, 2006

Borrower(s): CLARE TREVARTHEN

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 27th day of DECEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of MERIDIAS CAPITAL, INC., A NEVADA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

## 5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

---

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property after the first 0 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_Clare Trevarthen_ _12-28-06_ _____
Borrower   CLARE TREVARTHEN        Date          Borrower                              Date

_____          _____
Borrower                              Date          Borrower                              Date

_____          _____
Borrower                              Date          Borrower                              Date

DocMagic *eForms* 800-649-1362
www.docmagic.com



# ADDENDUM TO NOTE

This addendum is made DECEMBER 27, 2006 and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
1202 MAHOGANY LANE, CEDAR PARK, TEXAS 78613

## AMENDED PROVISIONS
In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 13.250 % or less than 7.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000 percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 13.250 %. My interest rate will never be less than 7.250 %.

## UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                          Page 1 of 2                 *DocMagic eForms* 800-649-1362
www.docmagic.com

379

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_Clare Trevarthen_ 12-28-06 _____
Borrower Signature CLARE  TREVARTHEN Date       Borrower Signature                          Date


_____           _____
Borrower Signature                    Date       Borrower Signature                          Date


_____           _____
Borrower Signature                    Date       Borrower Signature                          Date

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                          Page 2 of 2          DocMagic eForms 800-649-1362
                                                             www.docmagic.com

380

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Loan Number: <span style="background-color:black;color:red">REDACTED</span>7296

Property Address: 1202 MAHOGANY LANE, CEDAR PARK, TEXAS 78613

THIS ADDENDUM is made this 27th day of DECEMBER 2006 , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to MERIDIAS CAPITAL, INC., A NEVADA CORPORATION
(the Lender).

THIS ADDENDUM supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on FEBRUARY 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on JANUARY 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at DEPT. 9664, LOS ANGELES, CALIFORNIA 90084-9664
, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 821.67 . This payment amount is based on the original principal balance of the Note. This payment amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000 percentage point(s) ( 2.750 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the Interest-Only Period, 5.000 % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

_Clare Trevarthen_ 12-28-06 _____
Borrower                    Date    Borrower                    Date
CLARE TREVARTHEN


_____         _____
Borrower                    Date    Borrower                    Date


_____         _____
Borrower                    Date    Borrower                    Date

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 3

ITEM 3    Unendorsed Adjustable Rate Note          CR page 548-552


...CY TITLE COMPANY
CERTIFIES THAT THIS IS A
TRUE AND CORRECT COPY

MIN: 100256014000672964          Loan Number: 1400067296

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

DECEMBER 27, 2006          SALT LAKE CITY          UTAH
[Date]                              [City]                              [State]

1202 MAHOGANY LANE, CEDAR PARK, TEXAS 78613
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $136,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is MERIDIAS CAPITAL, INC., A NEVADA CORPORATION          .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.250          %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st          day of each month beginning on FEBRUARY 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at DEPT. 9664, LOS ANGELES, CALIFORNIA 90084-9664
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 927.76          . This amount may change.          ** See attached Interest Only Note Addendum.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 1 of 5

Form 3520 1/01
DocMagic *eRorms* 800-649-1362
*www.docmagic.com*

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 1st   day of JANUARY, 2012            , and on that day every  6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND 750/1000                   percentage points (       2.750   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        13.250  % or less than       7.250  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                   percentage point(s) (      2.000    %) from the rate of interest I have been paying for the preceding  6       months. My interest rate will never be greater than       13.250  %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01
*DocMagic €Forms* 800 649-1362
*www.docmagic.com*

549

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of       15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 3 of 5

Form 3520 1/01
*DocMagic €Rurmms 800-649-1362*
*www.docmagic.com*

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.   Lender also shall not exercise this option if· (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 4 of 5

Form 3520 1/01
*DocMagic EForms* 800-649-1362
*www.docmagic com*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Clare Trevarthen_ (Seal)  _____ (Seal)
CLARE TREVARTHEN        -Borrower                    -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                    -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                    -Borrower

PAY TO THE ORDER OF:
 WITHOUT RECOURSE

MERIDIAS CAPITAL, INC., A NEVADA CORPORATION

BY: _____

ITS:

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 5 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 4

ITEM 4    Declaration of Clare Trevarthen            CR page 661-679

# DECLARATION IN LIEU OF VERIFICATION PURSUANT TO TEXAS CIVIL PRACTICE AND REMEDIES CODE §132.001

## *Response to Nationstar Traditional & No-Evidence Motion for Summary Judgment*

"My name is Clare D Trevarthen. My date of birth is August 23, 1966. My address is 1204 Cedar Park Drive, Cedar Park, Texas, 78613, United States of America.

"I declare, under penalty of perjury, that the above and foregoing *Defendant's Response to Nationstar's Motion for Summary Judgment* are true and correct"

"I have firsthand knowledge of the facts stated in the notes taken with Aurora Loan Service from approximately October 27, 2008 and September 21, 2010 while attempting to complete a loan modification. During this period at least 17 payments were made to Aurora Loan Servicing amounting to $24,101.23 (via Western Union), while sending hundreds of pages of supporting documentation during this period.

"The principal loan balance at time of foreclosure was approximately $136,000.00

"Three Attempts were made to modify the loan (as pointed out by Defendants, MSJ, page 3.) Defendants are misleading the court by stating that Plaintiff defaulted on the three Attempts by showing only three payments were made on the Special Forbearance agreements.

"**I made made at least a total of 17 payments in a total of $24,101.23** (which were not shown to be credit to loan principle) that are shown by Western Union receipts, true and correct copies of which are attached.

"Supporting paperwork being sent in multiple times to Aurora which Aurora kept reassigning to new representatives, losing paperwork, claiming never received and then reassigning the file to a different negotiator which requested the same paperwork over and over again. Thousands of pages of supporting documents were faxed, and FedEx'd over the term of trying to modify the loan. This shows the intent of Plaintiff to modify the loan and get back on track.

"I was directly instructed not to make a payment as payment would be returned if sent.

"I attest that they are true and correct."

Executed in Williamson County, State of Texas, on September 29, 2014.

_Clare D Trevarthen_
Clare D Trevarthen, Declarant

**Payment sent Western Union to Auroa Loan Servicing**
**for 1202 Mahogany Lane, Cedar Park TX 78613**

| Date | Amount |
|---|---|
| 12/22/2008 | $1,600.00 |
| 1/29/2009 | $1,633.00 |
| 2/26/2009 | $1,633.00 |
| 7/13/2009 | $1,214.91 |
| 8/13/2009 | $1,671.00 |
| 9/14/2009 | $1,671.00 |
| 10/14/2009 | $1,671.00 |
| 11/13/2009 | $1,671.00 |
| 12/15/2009 | $1,270.79 |
| 1/15/2010 | $1,270.79 |
| 2/15/2010 | $1,270.79 |
| 3/30/2010 | $1,270.79 |
| 4/30/2010 | $1,270.79 |
| 5/27/2010 | $1,270.79 |
| 6/23/2010 | $1,270.79 |
| 9/23/2010 | $1,270.79 |
| 10/22/2010 | $1,170.00 |
| | |
| **Total** | **$24,101.23** |

Quick Collect   OperID: 119 06-30-10 0155P EDT
MTCN: 139-912-3153
HEB Food-Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX  78613
Phone:           (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF NE
Account #/Numero de cuenta: 0123814188

Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 125
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 5

Amount/Cantidad :    $ 1270.79
Charge(s)/Cargos:
Service/Servicio:    $    12.99
Total/Total      :   $ 1283.78
EXCITING CHANGES TO YOUR GOLD CARD PROGRAM
COMING SOON! We'll make it even easier with
a simplified way to earn points and new
rewards that load right onto your card!
Visit www.westernunion.com/goldcard to learn
more!
*************************************
****************** ADD PHONE
TIME! Gold Card acts as a rechargeable LONG
DISTANCE phone card. Add time using cash at
call 888-520-7924 to use
credit/debit card.

**Agent Signature /**
**Firma del Agente**

**Customer Signature /**
**Firma del Cliente**

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARA CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTA DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF
PHONE TIME! Your time is loaded directly on
your card. Calling instructions are on the
card back, or dial 888-628-8862 & enter your
personal PIN: 310541111663.

**WESTERN UNION**



**Customer Receipt / Recibo del Cliente**          www.westernunion.com

```
Quick Collect   OperID: 119 04-30-10 1126A EDT
MTCN: 658-430-2688
HEB Food-Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX  78613
Phone:          (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF NE
Account #/Numero de cuenta: 0123814188
```

```
Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 115
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 5
```

```
Amount/Cantidad :   $ 1270.79
Charge(s)/Cargos:
Service/Servicio:   $   12.99
Total/Total     :   $ 1283.78
ADD PHONE TIME!  Your Gold Card has a
rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within
continental U.S. No hidden fees. Add time
with cash at Agent. Call 1-888-520-7924 to
use a credit/debit card.
```

**Agent Signature /
Firma del Agente** _____

**Customer Signature /
Firma del Cliente** _____

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING **TO THOSE TERMS AND CONDITIONS.**

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

```
YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF
PHONE TIME! Your time is loaded directly on
your card. Calling instructions are on the
card back, or dial 888-628-8862 & enter your
personal PIN: 31054111663.
```

664




Quick Collect  OperID: 136 05-27-10 0249P EDT
MTCN: 982-485-9288
HEB Food-Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX  78613
Phone:          (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF NE
Account #/Numero de cuenta: 0123814188

Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 120
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 5

Amount/Cantidad :    $ 1270.79
Charge(s)/Cargos:
Service/Servicio:    $   12.99
Total/Total     :    $ 1283.78
ADD PHONE TIME!  Your Gold Card has a
rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within
continental U.S. No hidden fees. Add time
with cash at Agent. Call 1-888-520-7924 to
use a credit/debit card.

Agent Signature /
Firma del Agente _____

Customer Signature /
Firma del Cliente _____

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is loaded directly on your card. Calling instructions are on the card back, or dial 888-628-8862 & enter your personal PIN: 31054111663.

665

**WESTERN**



Quick Collect  OperID: 136 10-22-10 1259P EDT
MTCN: 063-433-2305
HEB Food-Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX  78613
Phone:          (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF ME
Account #/Numero de cuenta: 0123814188

Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 139
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 7

Amount/Cantidad :     $ 1170.00
Charge(s)/Cargos:
Service/Servicio:     $   12.99
Total/Total           $ 1182.99

EXCITING CHANGES TO YOUR GOLD CARD PROGRAM!
We'll make it even easier with a simplified
way to earn points and new rewards that load
right onto a card! Visit www.westernunion.
com/goldcard to learn more!
*********************************************
*********************** ADD PHONE
TIME! Gold Card acts as a rechargeable LONG
DISTANCE phone card. Add time using cash at
an Agent. Call 888-320-7924 to use
credit/debit card.

Agent Signature /                     Customer Signature /
Firma del Agente                      Firma del Cliente

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION
WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR
RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS.

CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A
MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU
TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE
INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS.

ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL
REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

YOU EARNED 6 MINUTES OF PHONE TIME! Your
time is loaded directly on your card.
Calling instructions are on the card back,
or dial 888-628-8862 & enter your personal
PIN: 31054111663.

666



**Customer Receipt / Recibo del Cliente**

```
HEB GROCERY #265              Oper ID: 764   Quick Collect
170 E WHITESTONE BLVD         11/13/09
CEDAR PARK TX 78613           235P CST       MTCN: 477-528-8719
```

Sender/Remitente: GRANT TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 012381 (Partial/Parcial)
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU          : 70
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

```
                              Amount/Cantidad:     $ 1671.00
                              Charge(s)/Cargos:
                                Service/Servicio:      12.99
                              Total/Total:         $ 1683.99
```

Send your next Quick Collect (R) payment to a U.S. biller FEE-FREE.
One discount per transaction-no cash value. Use promo code C0683-115284929.
Expires 12/31/09. Go to send1get1.com to learn more.
** Special Offer Just for You! Receive 150 Gold Card BONUS points when
you try a person-to-person US transfer by 11/30/09. One discount per
transfer. No cash value. Just use promo code J7315-105040232.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

DRCMICRNB 07/06
7442G

667

HEB GROCERY #265
170 E WHITESTONE BLVD
CEDAR PARK TX 78613

Oper ID: 904   Quick Collect
10/14/09
1128A CDT    MTCN: 828-686-8290

Sender/Remitente: GRANT TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 012381 (Partial/Parcial)
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU          : 65
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

Amount/Cantidad:    $ 1671.00
Charge(s)/Cargos:
    Service/Servicio:    12.99
Total/Total:    $ 1683.99

ADD PHONE TIME!  Your Gold Card has a rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within continental U.S. No hidden fees.
Add time with cash at Agent. Call 1-888-520-7924 to use a credit/debit card.
*** Upgrade to the NEW Reloadable Western Union Gold Card Visa Prepaid Card!
Free to upgrade and NO monthly maint, or purchase transaction fees. Sign up
today at mygoldcarddebit.com - No bank account or credit check required.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE
TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL
REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE
RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE
RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE
RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN
MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA
TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

IMPORTANT CONSUMER FRAUD ALERT. SEE REVERSE SIDE FOR DETAILS. AVISO IMPORTANTE SOBRE FRAUDE AL CONSUMIDOR, VER DORSO PARA DETALLES.

 **Customer Receipt / Recibo del Cliente**

```
HEB GROCERY #265                 Oper ID: 966    Quick Collect
170 E WHITESTONE BLVD            12/22/08
CEDAR PARK TX 78613              130P CST        MTCN: 621-325-6523
```

Sender/Remitente: CLARE TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 0123814188
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU       : 10
Assigned WU Card Points/Puntos asignados a la tarjeta WU  : 10

```
                              Amount/Cantidad:      $ 1600.00
                              Charge(s)/Cargos:
                                 Service/Servicio:     12.99
                              Total/Total:          $ 1612.99
```

Send the gift of cash with Western Union; perfect for any holiday!
Visit www.WesternUnion.com to share holiday gift stories and send
free e-cards.
*******************************************************************************
WELCOME! YOU JUST ACTIVATED YOUR GOLD CARD REWARDS ACCOUNT! Your Card & Kit
will arrive in 4-5 weeks. Save time AND earn phone time and Reward Points!

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

**\*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. \*ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. \* CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. \* ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.**

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

FAX # 866-517-7975



HEB GROCERY #265
170 E WHITESTONE BLVD
CEDAR PARK TX 78613

Oper ID: 904    Quick Collect
07/13/09
1124A CDT    MTCN: 618-816-5172

Sender/Remitente: CLARE TREVARTHEN
Receiver/Destinatario: AURORA LOAN
                                   City / State
Code City/Codigo de la ciudad: BLUFF NE

Reference #/Numero de referencia:
Attn/Atencion: LOAN 0123814188

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU          : 45
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

                          Amount/Cantidad:    $ 1214.91
                          Charge(s)/Cargos:
                            Service/Servicio:     12.99
*2oz Mahogany*            Total/Total:         $ 1227.90

can Western Union help you save up to 20% on your everyday
purchases? yes! start shopping at over 200 retailers, by visiting
westernunionperks.com to sign up for free today!
*****************************************************************
ADD PHONE TIME! Gold Card acts as a rechargeable LONG DISTANCE phone card.
Add time using cash at an Agent. Call 888-520-7924 to use credit/debit card.
Agent Signature /
Firma del Agente                    Customer Signature /
                                    Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE
TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL
REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE
RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE
RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE
RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN
MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA
TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

Amt. 1471.00

DRCMICRN3 07.08
7442G

UMER FRAUD ALERT. SEE REVERSE SIDE FOR DETAILS. AVISO IMPORTANTE SOBRE FRAUDE AL CONSUMIDOR. VER DORSO PARA DETALLES.

 **WESTERN UNION**

**Customer Receipt / Recibo del Cliente**

```
HEB GROCERY #265                    Oper ID: 906   Quick Collect
170 E WHITESTONE BLVD               09/14/09
CEDAR PARK TX 78613                 154P CDT      MTCN: 113-306-8001
```

Sender/Remitente: GRANT TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 012381 (Partial/Parcial)
Reference #/Numero de referencia:
Attn/Atencion:


Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU         : 60
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

```
                            Amount/Cantidad:     $ 1671.00
                            Charge(s)/Cargos:
                              Service/Servicio:      12.99
                            Total/Total:         $ 1683.99
```

ADD PHONE TIME!  Your Gold Card has a rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within continental U.S. No hidden fees.
Add time with cash at Agent. Call 1-888-520-7924 to use a credit/debit card.


Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.


DROMORNIS 07/08
7442G

# WESTERN UNION

**Customer Receipt / Recibo del Cliente**

```
HEB GROCERY #265                    Oper ID: 904   Quick Collect
170 E WHITESTONE BLVD               08/13/09
CEDAR PARK TX 78613                 1242P CDT      MTCN: 289-155-6940
```

Sender/Remitente: GRANT TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 012381 (Partial/Parcial)
Reference #/Numero de referencia:
Attn/Atencion:


Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU           : 55
Assigned WU Card Points/Puntos asignados a la tarjeta WU  : 5

```
                        Amount/Cantidad:     $ 1671.00
                        Charge(s)/Cargos:
                          Service/Servicio:      12.99
                        Total/Total:         $ 1683.99
```

ADD PHONE TIME!  Your Gold Card has a rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within continental U.S. No hidden fees.
Add time with cash at Agent. Call 1-888-520-7924 to use a credit/debit card.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.



**Customer Receipt / Recibo del Cliente**

IMPORTANT CONSUMER FRAUD ALERT, SEE REVERSE SIDE FOR DETAILS. AVISO IMPORTANTE SOBRE FRAUDE AL CONSUMIDOR, VER DORSO PARA DETALLES.

```
HEB GROCERY #265              Oper ID: 916    Quick Collect
170 E WHITESTONE BLVD         01/29/09
CEDAR PARK TX 78613           1208P CST     MTCN: 304-909-5644
```

Sender/Remitente: CLARE TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 0123814188
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU       : 15
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

```
                          Amount/Cantidad:    $ 1633.00
                          Charge(s)/Cargos:
                            Service/Servicio:     12.99
                          Total/Total:        $ 1645.99
```

NO MORE FORMS - JUST FOR GOLD CARD MEMBERS.
When sending a qualifying money transfer or bill payment to an existing
receiver, there is no need to fill out a form, saving even more time.
************************************************************************************
ADD PHONE TIME! Gold Card acts as a rechargeable LONG DISTANCE phone card.
Add time using cash at an Agent. Call 888-520-7924 to use credit/debit card.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE
TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL
REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE
RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE
RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE
RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN
MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA
TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.



```
HEB GROCERY #265              Oper ID: 916   Quick Collect
170 E WHITESTONE BLVD         02/26/09
CEDAR PARK TX 78613           1219P CST      MTCN: 449-460-3116
```

Sender/Remitente: CLARE TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 0123814188
Reference #/Numero de referencia:
Attn/Atencion: LOAN #0123814188

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU          : 30
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

```
                         Amount/Cantidad:    $ 1633.00
                         Charge(s)/Cargos:
                           Service/Servicio:     12.99
                         Total/Total:        $ 1645.99
```

NO MORE FORMS - JUST FOR GOLD CARD MEMBERS.
When sending a qualifying money transfer or bill payment to an existing
receiver, there is no need to fill out a form, saving even more time.
*******************************************************************
ADD PHONE TIME! Gold Card acts as a rechargeable LONG DISTANCE phone card.
Add time using cash at an Agent. Call 888-520-7924 to use credit/debit card.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE
TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL
REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE
RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE
RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE
RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN
MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA
TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

IMPORTANT CONSUMER FRAUD ALERT. SEE REVERSE SIDE FOR DETAILS. AVISO IMPORTANTE SOBRE FRAUDE AL CONSUMIDOR. VER DORSO PARA DETALLES.



Quick Collect OperID: 102 09-23-10 0245P EDT
MTCN: 143-528-2210
HEB Food Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX  78613
Phone:        (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF NE
Account #/Numero de cuenta: 0123814188

Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 132
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 7

Amount/Cantidad :   $ 1270.79
Charge(s)/Cargos:
Service/Servicio:   $   12.99
Total/Total      :   $ 1283.78
EXCITING CHANGES TO YOUR GOLD CARD PROGRAM!
We'll make it even easier with a simplified
way to earn points and new rewards that load
right onto a card! Visit www.westernunion
com/goldcard to learn more!
*************************************************
*************************** ADD PHONE
TIME! Gold Card acts as a rechargeable LONG
DISTANCE phone card. Add time using cash at
an Agent. Call 888-520-7924 to use
credit/debit card.

Agent Signature /
Firma del Agente _____

Customer Signature /
Firma del Cliente _____

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

YOU EARNED 3 MINUTES OF PHONE TIME! Your
time is loaded directly on your card.
Calling instructions are on the card back,
or dial 888-628-8862 & enter your personal
PIN: 31054111663.

Quick Collect OperID: 102 09-23-10 0245P EDT
MTCN: 143-528-2210
HEB Food-Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX  78613
Phone:          (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF NE
Account #/Numero de cuenta: 0123814188

Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 132
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 7

Amount/Cantidad :  $ 1270.79
Charge(s)/Cargos:
Service/Servicio:  $   12.99
Total/Total      :  $ 1283.78
EXCITING CHANGES TO YOUR GOLD CARD PROGRAM!
We'll make it even easier with a simplified
way to earn points and new rewards that load
right onto a card! Visit www.westernunion
com/goldcard to learn more!
********************************************
*********************** ADD PHONE
TIME! Gold Card acts as a rechargeable LONG
DISTANCE phone card. Add time using cash at
an Agent. Call 888-520-7924 to use
credit/debit card/

Agent Signature /
Firma del Agente _____

Customer Signature /
Firma del Cliente _____

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

YOU EARNED 3 MINUTES OF PHONE TIME! Your
time is loaded directly on your card.
Calling instructions are on the card back,
or dial 888-628-8862 & enter your personal
PIN: 31054111663.



**WESTERN UNION**

HEB GROCERY #265
170 E WHITESTONE BLVD
CEDAR PARK TX 78613

Oper ID: 764   Quick Collect
12/15/09
842A CST        MTCN: 666-461-6352

Sender/Remitente: GRANT TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 012381 (Partial/Parcial)
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU      : 85
Assigned WU Card Points/Puntos asignados a la tarjeta WU  : 5

| | |
|---|---|
| Amount/Cantidad: | $ 1270.79 |
| Charge(s)/Cargos: | |
| Service/Servicio: | 12.99 |
| Total/Total: | $ 1283.78 |

Send your next Quick Collect (R) payment to a U.S. biller FEE-FREE.
One discount per transaction-no cash value. Use promo code C0683-128590965.
Expires 01/31/10. Go to send1get1.com to learn more.
New! Western Union(R) Gift and Greeting Card-send the gift of money! Send up
to $100 on a Visa Gift Card with a personalized greeting card, voice message
and free 1st class shipping for only $5! Order today at wugift.com.

Agent Signature /
Firma del Agente
Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY.
PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE
TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL
REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE
SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE
RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE
RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE
RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN
MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA
TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

677



**Customer Receipt / Recibo del Cliente**          www.westernunion.com

Quick Collect OperID: 104 02-15-10 0149P EST
MTCN: 349-795-2881
HEB Food-Drugs #14/265
170 E. Whitestone Blvd.
Cedar Park, TX 78613
Phone:          (512) 259-5500
Sender/Remitente:
GRANT TREVARTHEN
Receiver/Destinatario:
AURORA LOAN
Code City/Codigo de la ciudad:
BLUFF NE
Account #/Numero de cuenta: 0123814188

Western Union Card Number/
Numero de Tarjeta: 456232546
Total WU Card Points/
Total puntos en tarjeta WU: 105
Assigned WU Card Points/
Puntos asignados a la tarjeta WU: 5

```
Amount/Cantidad :     $ 1270.79
Charge(s)/Cargos:
Service/Servicio:     $   12.99
Total/Total     :     $ 1283.78
```

ADD PHONE TIME! Your Gold Card has a
rechargeable LONG DISTANCE phone card
feature. Rates as low as 3.9c/minute within
continental U.S. No hidden fees. Add time
with cash at Agent. Call 1-888-520-7924 to
use a credit/debit card. *** Upgrade to the
NEW Reloadable Western Union Gold Card Visa
Prepaid Card! Free to upgrade and NO monthly
maint, or purchase transaction fees. Sign up
today at mygoldcarddebit.com - No bank
account or credit check required.

Agent Signature /
Firma del Agente

Customer Signature/
Firma del Cliente

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF
PHONE TIME! Your time is loaded directly on
your card. Calling instructions are on the
card back, or dial 888-628-9862 & enter your
personal PIN: 31054111663.



**Customer Receipt / Recibo del Cliente**

IMPORTANT CONSUMER FRAUD ALERT. SEE REVERSE SIDE FOR DETAILS. AVISO IMPORTANTE SOBRE FRAUDE AL CONSUMIDOR. VER DORSO PARA DETALLES.

HEB GROCERY #265
170 E WHITESTONE BLVD
CEDAR PARK TX 78613

Oper ID: 764   Quick Collect
01/15/10
210P CST     MTCN: 983-256-3202

Sender/Remitente: GRANT TREVARTHEN
Receiver/Destinatario: AURORA LOAN

Code City/Codigo de la ciudad: BLUFF NE
Account #/Numero de cuenta: 012381 (Partial/Parcial)
Reference #/Numero de referencia:
Attn/Atencion:

Western Union Card Number / Numero de Tarjeta: 456232546
Total WU Card Points/Total puntos en tarjeta WU          : 100
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5

Amount/Cantidad:   $ 1270.79
Charge(s)/Cargos:
  Service/Servicio:      12.99
Total/Total:       $ 1283.78

ADD PHONE TIME!  Your Gold Card has a rechargeable LONG DISTANCE phone card feature. Rates as low as 3.9c/minute within continental U.S. No hidden fees. Add time with cash at Agent. Call 1-888-520-7924 to use a credit/debit card. *** Upgrade to the NEW Reloadable Western Union Gold Card Visa Prepaid Card! Free to upgrade and NO monthly maint, or purchase transaction fees. Sign up today at mygoldcarddebit.com - No bank account or credit check required.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is loaded directly on your card. Calling instructions are on the card back, or dial 888-628-8862 & enter your personal PIN: 310541111663.

DRCMICRN9 07/08
7442G

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 5

ITEM 5      Additional Declaration of Clare Trevarthen   CR page 682

## DECLARATION IN LIEU OF VERIFICATION PURSUANT TO TEXAS CIVIL PRACTICE AND REMEDIES CODE §132.001

***Response to Nationstar Traditional & No-Evidence Motion for Summary Judgment***

"My name is Clare D Trevarthen. My date of birth is August 23, 1966. My address is 1204 Cedar Park Drive, Cedar Park, Texas, 78613, United States of America.

I declare, under penalty of perjury, that the above and foregoing *Defendant's Original Answer, Motion to Dismiss, or in the alternative, Plea in Abatement* is true and correct"

I have firsthand knowledge of the facts stated in the notes taken with Aurora Loan Service from approximately October 27, 2008 and September 21, 2010 while attempting to complete a loan modification. During this period at least 17 payments were made to Aurora Loan Servicing amounting to $24,101.23 (via Western Union), while send hundreds of pages of supporting documentation during this period.

I attest that they are true and correct to the best of my knowledge.


Executed in Williamson County, State of Texas, on September 29, 2014.

Clare D Trevarthen, Declarant

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 6

ITEM 6      Notice of Assignment, Sale, or Transfer      CR page 387

# AURORA LOAN SERVICES

February 16, 2007

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

3640123814188534WEL021607
83002 0002881 001
CLARE TREVARTHEN
1204 CEDAR PARK DRIVE
CEDAR PARK TX 78613

RE:   Florez Consulting Company
Loan # REDACT 7296
Aurora Loan Services
Loan # REDACT 4188

Dear Borrower(s):

This letter is to notify you that the servicing of your mortgage loan is being assigned, sold or transferred from Florez Consulting Company ("Florez Consulting Company") to Aurora Loan Services ("Aurora"), effective March 01, 2007. The transfer of your mortgage loan to Aurora includes the right to collect payments from you.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Florez Consulting Company. If you have any questions relating to the transfer of servicing from your present servicer call Florez Consulting Company's Nick Florez at 702–938–6800. This is a collect call number.

Beginning March 01, 2007, your new servicer will be Aurora Loan Services. The business address and toll-free telephone numbers for your new servicer are:

| | | |
|---|---|---|
| Aurora Loan Services | Aurora Loan Services | Aurora Loan Services |
| Customer Service Department | Tax Department | Insurance Center |
| P.O. Box 1706 | P.O. Box 961233 | P.O. Box 2963 |
| Scottsbluff, NE 69363–1706 | Fort Worth, TX 76161–0233 | Phoenix, AZ 85062–2963 |
| 1 (800) 550–0508 | 1 (800) 550–0508 | 1 (800) 732–6578 |
| 6:00 A.M. to 7:00 P.M., MT | 8:00 A.M. to 5:00 P.M., MT | 6:00 A.M. to 6:00 P.M., MT |
| Monday through Friday | Monday through Friday | Monday through Friday |
| 8:00 A.M. to 12:00 P.M., MT | | |
| Saturday | | |

If you have any questions relating to the transfer of servicing to your new servicer, please call the numbers listed above. Please note the change of your loan number listed above and reference this loan number on all tax and insurance bills and any correspondence to Aurora.

The date that Florez Consulting Company will stop accepting payments from you is February 28, 2007. The date that Aurora will begin accepting payments from you is March 01, 2007. Send all payments due on or after that date to Aurora Loan Services.

If you have been paying premiums for life, disability, accidental death insurance or other optional products, these policies will not transfer to Aurora. If you desire to continue your optional coverage, you can contact your optional insurance provider and discuss the possibility of remitting your premium directly.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Secton 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

Aurora Loan Services
Attention: Customer Service Research
P.O. Box 1706
Scottsbluff, NE 69363–1706

## ***CONTINUED ON REVERSE SIDE***

DETACH AND RETURN BOTTOM PORTION

CLARE TREVARTHEN

Remit U.S. funds payable to Aurora Loan Services
Include your loan number on your check.

AURORA LOAN SERVICES
ATTN: CASHIERING
P.O. BOX 78111
PHOENIX AZ 85062–8111



| ACCOUNT NUMBER | PAYMENT AMOUNT DUE |
|---|---|
| REDACTE 4188 | 1,245.99 |

Additional Principal

Additional Escrow

Late Charges/Fees

Other

Amount Enclosed  $

☐ Please check here if mailing address, telephone number or email have recently changed and complete form on reverse side.

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 7

ITEM 7    Letter to Clare Trevarthen July 8, 2011    CR page 389-390

 

July 6, 2011

5-704-59070-0010680-001-01-000-100-000-000
CLARE TREVARTHEN
1204 CEDAR PARK DR
CEDAR PARK TX 78613-2136

Aurora Loan Services LLC Mortgage Loan Account Number: REDACTED4188
Aurora Bank FSB Mortgage Loan Account Number: REDAC14188

Dear Customer(s):

**Aurora Loan Services LLC (Aurora Loan Services) and Aurora Bank FSB (Aurora Bank), want** to take this opportunity to say "Thank You" and "Welcome." Effective July 21, 2011, your mortgage loan servicing will be transferred from Aurora Loan Services to our parent company, Aurora Bank. This transfer **does not affect** the terms or conditions of your loan documents other than the terms directly related to the servicing of your loan. You will keep the same mortgage loan account number, the same access to the web site, , and the same service that you experienced previously with Aurora Loan Services. Also, additional information regarding this change can be found on in the FAQ section.

In an effort to make this transfer as smooth as possible for you, below please find a brief list of important updates. Please take a moment to review this information, as it may answer many of your questions.

**Regarding Your Mortgage Statements, Payments, and Optional Products**

1. Aurora Bank will start accepting payments on July 21, 2011. Starting on that date, all future or past due payments should be sent to Aurora Bank at the same address to which you previously sent payments (noted below). Please always include your Aurora Bank mortgage loan account number on your check and make it payable to: Aurora Bank FSB. Every month you will receive a detailed statement from Aurora Bank reflecting all your activity and key financial data. Your first monthly Mortgage Account Statement will arrive in August.

2. If you made payment(s) to Aurora Loan Services and any payment(s) was received on or after July 21, 2011, it will be processed by Aurora Bank. Because your mortgage loan account number and address to which you are sending your mortgage loan account payments are not changing, we don't anticipate any delay in processing your payment due to this transfer of servicing.

3. If Aurora Loan Services is currently automatically drafting your monthly payment from your bank account, Aurora Bank will continue this service for you. If you would like to discontinue your automatic drafting arrangement, please contact Aurora Bank at the phone number or address listed below.

4. If your payment is issued by a third party, or if you make your payment through a bill pay or online service, or if your mortgage payment is drafted biweekly through a third party provider, please take the appropriate action to change the name of your mortgage loan servicer from Aurora Loan Services to Aurora Bank. Because your payment address and account number are not changing, only the name needs to be changed with your bill pay/payment drafting service.

5. In January 2012, in addition to your monthly statement, you will receive an Annual Statement from Aurora Bank listing all payments on your account during 2011, including payments made to Aurora Loan Services. This Annual Statement will report the amount of interest and real estate taxes you paid during 2011.

6. If your monthly payment includes the collection of optional insurance premiums and/or membership fees, Aurora Bank will continue to collect your monthly premiums and/or membership fees and remit them to the appropriate provider(s).

7. If you previously provided information or documentation to Aurora Loan Services in support of your request for a possible loan modification under the federal government's Home Affordable Modification Program ("HAMP") or you have been established on a HAMP Trial Period Plan, Aurora Loan Services will be transferring all your documentation to Aurora Bank. Prior to July 21, 2011, you should continue to make your monthly Trial Period Plan payments to Aurora Loan Services. On or after July 21, 2011, you should make all Trial Period Plan payments to Aurora Bank, until such time that you are provided additional direction. Prior to July 21, 2011, approval decisions regarding your request for a possible HAMP loan modification will be made by Aurora Loan Services. On or after July 21, 2011, approval decisions regarding your HAMP loan modification request will be made by Aurora Bank.

8. If you previously provided information and documentation in support of your request for approval of other possible loss mitigation options (including a loan modification, repayment agreement, forbearance agreement, short sale, or deed-in-lieu of foreclosure) Aurora Loan Services will be transferring all of your documentation to Aurora Bank. Prior to July 21, 2011, approval decisions regarding your request for other possible loss mitigation options will be made by Aurora Loan Services. On or after July 21, 2011, approval decisions regarding your loss mitigation option request will be made by Aurora Bank.

**How to Contact Us**
Should you have questions, here are the applicable mailing addresses, toll-free numbers and hours of operation.
**CONTACT YOUR PRESENT SERVICER, Aurora Loan Services LLC, PRIOR TO July 21, 2011:**
**CUSTOMER SERVICE:**
1-800-550-0508
8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday, 8:00 a.m. to 9:00 p.m. (ET) Friday, 8:00 a.m. to 4:00 p.m. (ET) Saturday

**CONTACT YOUR NEW SERVICER, Aurora Bank FSB, ON OR AFTER July 21, 2011:**
**CUSTOMER SERVICE:**
1-800-550-0508
8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday, 8:00 a.m. to 9:00 p.m. (ET) Friday, 8:00 a.m. to 4:00 p.m. (ET) Saturday

**SEND PAYMENTS TO:**
Aurora Bank FSB
P.O. Box 78111
Phoenix, AZ 85062-8111

**We Look Forward to Serving You**

We greatly appreciate the trust you have placed in us. Aurora Loan Services would like to extend a sincere "thank you" for the opportunity to serve you, and from Aurora Bank comes a genuine "welcome."

Sincerely,                                          Sincerely,

Cassie Leet, VP Customer Service                   Pam Pedersen, VP Loan Transfer
Aurora Loan Services LLC                            Aurora Bank FSB

Enclosure: Aurora Bank FSB Privacy Notice

**Important Information on reverse side of this letter**

When you provide a check, you authorize us to use information from your check to make a one-time electronic fund transfer from your account. If we use your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**The following Notice is required by Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605)**
**NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS**

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Aurora Loan Services LLC to Aurora Bank FSB, effective July 21, 2011.

The assignment, sale or transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, all necessary information is combined in this one notice.

Your present servicer is Aurora Loan Services LLC. If you have any questions relating to the transfer of servicing from your present servicer, please call Aurora Loan Services Customer Service Department toll free at 1-800-550-0508 8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday 8:00 a.m. to 9:00 p.m. (ET) Friday 8:00 a.m. to 4:00 p.m. (ET) Saturday

Your new servicer will be Aurora Bank FSB. The business address for your new servicer is the same address you previously used for Aurora Loan Services and is:

**Aurora Bank FSB**
**ATTN: Customer Service**
**P.O. Box 1706**
**Scottsbluff, NE 69361-1706**

The toll-free telephone number of your new servicer is the same toll free number as you previously used for Aurora Loan Services and is 1-800-550-0508. If you have any questions relating to the transfer of servicing to your new servicer call Customer Service at 1-800-550-0508.

The date that your present servicer will stop accepting payments from you is July 20, 2011. The date that your new servicer will start accepting payments from you is July 21, 2011. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of, or the continued availability of any optional insurance coverage or other membership products. If your monthly payment includes the collection of optional insurance premiums and/or membership fees Aurora Bank will continue to collect your monthly premiums and/or membership fees and remit them to the appropriate provider(s).

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:

**PRIOR TO July 21, 2011:**          **ON OR AFTER July 21, 2011:**

**Aurora Loan Services LLC**          **Aurora Bank FSB**
**ATTN: CUSTOMER RESEARCH**          **ATTN: CUSTOMER RESEARCH**
**P.O. Box 1706**          **P.O. Box 1706**
**Scottsbluff, NE 69361-1706**          **Scottsbluff, NE 69361-1706**

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 8

ITEM 8     Letter to Clare Trevarthen June 15, 2012     CR page 392

 **AuroraBank**FSB

June 15, 2012

3640123814188534GDB061512
68569 0003318 001
CLARE TREVARTHEN
c/o David Rogers
2525 Wallingwood Drive, Ste 600
Austin TX 78746

RE: Aurora Bank FSB
     Loan # REDACTED 4188
     Nationstar Mortgage LLC
     Loan # REDACTED 2692

Dear Customer(s):

You are hereby notified that the servicing of your loan, that is, the right to collect payments from you, is being transferred from Aurora Bank FSB (Aurora Bank) to Nationstar Mortgage LLC effective July 1, 2012. The assignment, sale or transfer of the servicing of the loan does not affect any terms or conditions of the loan instruments, other than terms directly related to the servicing of your loan.

Questions relating to the transfer of servicing from Aurora Bank before July 1, 2012 should be directed to Aurora Bank Customer Service Department at 1-800-550-0508 between 8:00 AM and 11:00 PM, Eastern Time Monday through Thursday, 8:00 AM to 9:00 PM ET Friday, and 8:00 AM to 4:00 PM ET Saturday.

If you have questions relating to your loan after June 30, 2012, please contact Nationstar Mortgage LLC's Customer Service. The business address, toll-free telephone number and customer service hours for Nationstar Mortgage LLC are:

     Nationstar Mortgage LLC
     Customer Service
     350 Highland Drive
     Lewisville, Texas 75067
     1-877-372-0512 Ext 95
     8:00 AM to 8:00 PM CT, Monday through Thursday
     8:00 AM to 5:00 PM CT, Friday

Effective July 1, 2012, please make your checks payable to Nationstar Mortgage LLC and mail to the address below. Aurora Bank will forward any payments or correspondence received after June 30, 2012 to Nationstar Mortgage LLC for processing. If your payments are currently paid through an automatic deduction from your checking or savings account, this service will continue uninterrupted.

     Nationstar Mortgage LLC
     Attn: Payment Processing
     P. O. Box 650783
     Dallas, Texas 75265-0783

If you are currently making your loan payment through government allotment or have established a third party relationship to automatically make payments on your behalf, please ensure that (1) you take the necessary steps to advise them of your new loan number and (2) that the payee's name is changed to Nationstar Mortgage LLC.

If you are currently a biweekly payment customer, this service will continue. An agent for Nationstar Mortgage LLC will contact you with regard to your mortgage payments.

If you have been paying premiums for optional life, disability or accidental death insurance, these policies will not transfer to Nationstar Mortgage LLC.

In January 2013, you will receive a year-end statement from Nationstar Mortgage LLC reflecting loan activity occurring between January 1, 2012 and December 31, 2012. This statement will be mailed no later than January 31, 2013.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by Aurora Bank before its due date may not be treated by your new servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reason for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides the damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

Home Affordable Modification Program:
If you previously provided information or documentation to Aurora Bank in support of your request for a possible loan modification under the federal government's Home Affordable Modification Program ("HAMP") or you have been established on a HAMP Trial Period Plan, Aurora Bank will be transferring all your documentation to Nationstar Mortgage LLC.

Until the transfer date, you should continue to make your monthly Trial Period Plan payments to Aurora Bank. After the transfer date, you should make all Trial Period Plan payments to Nationstar Mortgage LLC, until such time that you are provided additional direction.

Prior to the transfer date, approval decisions regarding your request for a possible HAMP loan modification will be made by Aurora Bank. After the transfer date, approval decisions regarding your HAMP loan modification request will be made by Nationstar Mortgage LLC.

Other Loss Mitigation Options:
If you have previously provided information and documentation in support of your request for approval of other possible loss mitigation options (including a loan modification, repayment agreement, forbearance agreement, short sale, refinance or deed-in-lieu of foreclosure) Aurora Bank will be transferring all of your documentation to Nationstar Mortgage LLC.

Prior to the transfer date, approval decisions regarding your request for other possible loss mitigation options will be made by Aurora Bank. After the transfer date, approval decisions regarding your loss mitigation option request will be made by Nationstar Mortgage LLC.

Please retain this information with your loan documentation for future reference. Aurora Bank appreciates the opportunity to provide service on your loan and for allowing us to be of service to you.

Sincerely,

Cassie Leet
Customer Service Manager

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 9

ITEM 9     Corporate Assignment of Deed of Trust     CR page 468-469

ASSN 2011021192
2 PGS

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

*1318457-5*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Williamson, Texas
SELLER'S SERVICING #:0123814188 "TREVARTHEN"
OLD SERVICING #: FC

MERS #: 100256014000672964 VRU #: 1-888-679-6377

Date of Assignment: March 7th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MERIDIAS CAPITAL, INC. IT'S SUCCESSORS AND ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361

Executed By: CLARE TREVARTHEN AND SPOUSE, GRANT TREVARTHEN, SIGNING PRO FORMA TO PERFECT LIEN ONLY To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MERIDIAS CAPITAL, INC.
Date of Deed of Trust: 12/27/2006 Recorded: 12/29/2006 as Instrument No.: 2006113657 In the County of Williamson, State of Texas.

Property Address: 1202 MAHOGANY LANE, CEDAR PARK, TX 78613
Legal Description: As Referenced on Original Recorded Document

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of  with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MERIDIAS CAPITAL, INC. IT'S SUCCESSORS AND ASSIGNS
On March 7th, 2011

By:
JAN WALSH, Vice-President

*RRG*RRGALSI*03/07/2011 12:53:47 PM* ALSI01ALSIAD00000000000000000708059* TXWILLI* 0123814188 TXWILLI_TRUST_ASSIGN_ASSN **RRGALSI*

CERTIFIED TO BE A TRUE AND CORRECT COPY

NANCY E. RISTER, County Clerk
Williamson County

Page 1 of 2

468

STATE OF Nebraska
COUNTY OF Scotts Bluff

On March 7th, 2011, before me, ROBERTA A. RUMMEL, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared JAN WALSH, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

ROBERTA A. RUMMEL
Notary Expires: 09/18/2014

GENERAL NOTARY - State of Nebraska
ROBERTA A. RUMMEL
My Comm. Exp. Sept. 18, 2014

(This area for notarial seal)

*RRG*RRGALSI*03/07/2011 12:53:47 PM* ALSI01ALSIA00000000000000000708059* TXWILLI* 0123814188 TXWILLI_TRUST_ASSIGN_ASSN *RRGALSI*

LPS Land Records Division
1525 W. Walnut Hill Lane
Suite 300
Irving, TX 75038

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS   2011021192

Nancy E. Rister

03/31/2011 04:11 PM
MARIA $20.00
NANCY E. RISTER, COUNTY CLERK
WILLIAMSON COUNTY, TEXAS

469

CERTIFIED TO BE A TRUE AND CORRECT COPY



NANCY E. RISTER, County Clerk
Williamson County

Page ___2___ of ___2___

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G. Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 10

ITEM 10    Substitute Trustee's Deed                CR page 471-474

**2011039311**
**Electronically Recorded**
Official Public Records

Nancy E. Rister

Nancy E. Rister, County Clerk
2011 Jun 17 10:44 AM
Fee: $ 28.00    Pages: 4
Williamson County Texas

TS No 1318457-05

 

## Substitute Trustee's Deed

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR
STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED
FOR RECORD IN THE PUBLIC RECORDS· YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S
LICENSE NUMBER.

STATE OF TEXAS
COUNTY OF WILLIAMSON

WHEREAS, CLARE TREVARTHEN AND SPOUSE, GRANT TREVARTHEN, SIGNING PRO FORMA TO
PERFECT LIEN ONLY, in order to secure the payment of a Note for the sum set forth in said Note, payable to the
order of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE
FOR NEVADA CORPORATION, made, executed and delivered to RICHARD HAWN, Trustee, a certain Deed of
Trust dated December 27, 2006, recorded in Volume XX, Instrument No. 2006113657, Page XX of the Real
Property Records of WILLIAMSON County Texas, to which Deed of Trust and its record reference is here made for
a detailed description of said Note, the terms and covenants of said Deed of Trust, and the lands and premises there
conveyed, said land being more particularly described as follows

LOT 83, WEST PARK OAKS PHASE I, A SUBDIVISION OF WILLIAMSON COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT OF RECORD IN CABINET G, SLIDES 338-339, PLAT RECORDS OF
WILLIAMSON COUNTY, CORRECTED IN VOLUME 1323, PAGE 673 AND VOLUME 1323, PAGE 676,
OFFICIAL RECORDS OF WILLIAMSON COUNTY, TEXAS.

WHEREAS, said Note together with the liens securing same was transferred and assigned in due course for value
before maturity to AURORA LOAN SERVICES, LLC.

WHEREAS, it is provided in said Deed of Trust that failure to make any of the payments in the above described
Note as the same became due and payable, or failure to comply with any or all of the covenants and conditions of
said Deed of Trust, shall, at the option of AURORA LOAN SERVICES, LLC, or the legal or equitable holder
thereof, mature the whole of said Note and in such event or events and at the request of the owner or holder of said
Note secured by said Deed of Trust, the said Trustee or his successors shall enforce said Trust by selling the
hereinbefore described land and premises according to law, and in accordance with the provisions of said Deed of
Trust, all as more fully set out in said Deed of Trust; and,

WHEREAS, Default was made in the payment of said note according to the terms, tenor and effect thereof, and the
legal or equitable owner or holder of said note, after all required notices were given, evidenced by Affidavit of
Notice to Debtors and Affidavit of Military Status, attached hereto and made a part hereof, declared the whole note
immediately due and payable and the Trustee named in said Deed of Trust having been removed, the owner and
holder of said indebtedness appointed the undersigned as Substitute Trustee, and requested the undersigned to sell
said land and premises according to law and in accordance with the provisions of said Deed of Trust, in satisfaction
of the indebtedness secured by said Deed of Trust; and,

WHEREAS, the holder of the debt, by certified mail, has given written notice to the debtors at their last known
address that the debtor was in default under the terms of the Deed of Trust and giving the debtor at least twenty days
to cure the default (or thirty days if the above referenced Deed of Trust so states) prior to the entire debt being
accelerated and the Notice of Trustee Sale given, and

WHEREAS, the said land above described was advertised for sale, and written notices of sale were posted in
accordance with the terms of said Deed of Trust and in accordance with the laws of the State of Texas pertaining to
the foreclosure under the Deed of Trust, at least 21 days preceding the date of sale at the Courthouse Door of
WILLIAMSON County, Texas, and



CERTIFIED TO BE A TRUE AND
CORRECT COPY

NANCY E. RISTER, County Clerk
Williamson County

Page_____ 471 4_
Page        of

TDUSTX DOC

TS No. 1318457-05

WHEREAS, the holder of the debt requested the Substitute Trustee and by this instrument the Substitute Trustee swears, deposes and states under oath that there was served written notice of the proposed sale by certified mail at least twenty-one (21) days preceding the date of sale on each debtor obligated to pay such debt according to the records of such holder by deposit of the Notice, enclosed in a postpaid wrapper, properly addressed to each debtor at the most recent address shown by the records of the holder of the debt, in a post office or official depository under the care and custody of the United States Postal Service; and a copy of such Notice of Sale was filed with the County Clerk of such County preceding the date of this sale, and that the Mortgagor(s), his (their), heirs and/or assigns are alive and are not in the military service and were not in the military service on the day of sale nor 9 months prior to the day of sale.

WHEREAS, I, the said Substitute Trustee, after all prerequisites required by law and/or by said Deed of Trust have been duly satisfied by the holder of the Note, and by said Substitute Trustee, did conduct the sale on June 07, 2011, said sale beginning no earlier than 10:00am o'clock and being concluded within 3 hours of such starting time on the date for which said sale was advertised, offering the said land and premises for sale and conducting said sale in the area of the Courthouse designated by the Commissioner's Court, pursuant to Section 51 002 of the Texas Property Code as the place where foreclosure sales are to take place and if no place was designated by the Commissioner's Court, the sale was conducted at the place where the Notice of Trustee's Sale was posted in the County Courthouse; and,

WHEREAS, at the said sale AURORA LOAN SERVICES, LLC, (hereinafter "Grantee"), whose address is 2617 COLLEGE PARK DRIVE SCOTTSBLUFF NE 69361-2294, bid for said land and premises the sum of $157,110 55, which was the highest and best bid offered for said land and premises, whereupon said land and premises were knocked off and sold for said sum to the said Grantee in accordance with the terms and provisions of said Deed of Trust,

NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS: that I, the said Substitute Trustee, named and appointed under the terms of said Deed of Trust, acting herein under and by virtue of the power conferred upon me by the said Deed of Trust, and in accordance with the laws of the State of Texas, for and in consideration of the sum bid as aforesaid, which amount has been applied in accordance with the terms of said Deed of Trust on the indebtedness secured by it, do hereby bargain, sell and convey unto the said Grantee the said hereinbefore described land and premises, together with all and singular the rights and appurtenances to the same in anywise belonging.

TO HAVE AND TO HOLD the said property unto the said Grantee, its successors and assigns, forever, in fee simple, and I, the said Substitute Trustee, acting in the capacity and manner aforesaid, by virtue of the power vested in me under the terms of said Deed of Trust, do hereby bind and obligate the said mortgagor(s), his (their) heirs, assigns, executors and administrators to warrant and forever defend all and singular the right and title to said property unto the said Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof

TDUSTX DOC

Page 2 of 3

CERTIFIED TO BE A TRUE AND
CORRECT COPY

NANCY E. RISTER, County Clerk
Williamson County

Page ___2___ of ___4___

472

TS No. 1318457-05

EXECUTED this instrument on _June 13, 2011_

*Juanita Strickland*

Substitute Trustee

State of Texas
County of _Travis_

SUBSCRIBED AND SWORN TO (OR AFFIRMED) before me, _Angela Carter_ on
this _13_ day of _June 2011_, by
_Juanita Strickland_,
personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared
before me.

*Angela Carter*

Signature of Notary Public

ANGELA CARTER
Notary Public, State of Texas
My Commission Expires
January 06, 2012

RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
PO BOX 22004
EL CAJON CA 92022-9004

TDUSTX DOC

CERTIFIED TO BE A TRUE AND
CORRECT COPY
NANCY E. RISTER, County Clerk
Williamson County
Page _3_ of _4_

Page 3 of 3

## AFFIDAVIT OF NOTICE TO DEBTORS
## AND AFFIDAVIT OF MILITARY STATUS

TS No. 1318457-05

THE STATE OF TEXAS
COUNTY OF WILLIAMSON

BEFORE ME, the undersigned authority, on this day personally appeared Affiant below named, who after being by me duly sworn did state as follows:

"The Notice of Trustee's Sale was posted at least twenty-one (21) days preceding the date of the sale at the Courthouse door of the County in which the property is located, and if appropriate, at two (2) other public places in such county, as set forth on the Notice of Trustee's Sale. A signed Notice of Trustee's Sale was filed in the office of the County Clerk of such county at least twenty-one (21) days preceding the date of the sale. In addition, the holder(s) of the debt cause the Notice of Trustee's Sale to be served and said Notice was served by Certified Mail upon all debtors obligated to pay the debt described in said Notice of Trustee's Sale, according to the records of such holder(s), at least twenty-one (21) days preceding the date of sale. The service was completed by depositing said written notice, enclosed in a postpaid wrapper, properly addressed as shown by the records of the holder(s) of the debt, in an official depository under the care and custody of the United States Postal Service."

"The debtor(s) in default under the Deed of Trust/Security Instrument on the property described in the Notice of Trustee's Sale were served with written notice by certified mail of their default, and were given at least twenty (20) days to cure the default before the entire debt became due and notice of sale was given; such writing gave notice of intent to accelerate if such default was not cured."

"To the best of my knowledge, the owners of the property on the date of the Trustee's Sale, which date of sale and property are set forth and described in the Notice of Trustee's Sale were not in the military service nine (9) months prior to said Trustee's Sale."

EXECUTED on June 08, 2011

_____
Susan Smothers, A.V.P.

SUBSCRIBED AND SWORN TO BEFORE ME, on June 08, 2011, to certify which witness my hand and seal of office.

State of California
County of San Diego

Subscribed and sworn to (or affirmed) before me on this 8th day of _____, 20 11 by _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Seal

Signature _____

ROSALYN HALL
COMM. #1793727
Notary Public - California
San Diego County
My Comm. Expires Mar. 16, 2012

MILAFD DOC

STATE OF TEXAS
COUNTY OF WILLIAMSON
I, NANCY E. RISTER, COUNTY CLERK, DO HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY AS SAME APPEARS OF RECORD IN MY CUSTODY.
Witness my hand and seal of office on March 12, 2014
NANCY E RISTER, COUNTY CLERK
WILLIAMSON COUNTY, TEXAS
By_____ Deputy

Page 1 of 1

CERTIFIED TO BE A TRUE AND CORRECT COPY

NANCY E. RISTER, County Clerk
Williamson County

Page 4 of 4

No. 03-15-00011-CV

---

**IN THE THIRD COURT OF APPEALS OF TEXAS**

---

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.**
**Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

---

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

---

**APPENDIX ITEM 11**

---

ITEM 11    Notice of Appeal                              CR page 731-737

CAUSE NO. 14-0187-C26

| | | |
|---|---|---|
| CLARE TREVARTHEN | § | |
| | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | 26th JUDICIAL DISTRICT |
| | § | |
| NATIONSTAR MORTGAGE LLC, | § | |
| AUCTION.COM. JEREMIAH | § | |
| MCCLAIN, PAMELA CIRKIEL | § | |
| SHAMICA THOMAS, HELEN G. | § | |
| KINNEMAN | § | |
| | § | |
| Defendants | § | WILLIAMSON COUNTY, TEXAS |

## **PLAINTIFF'S NOTICE OF APPEAL**

Plaintiff, Clare Trevarthen, notices this court that he will appeal the court's orders signed November 10, 2014.

1. Plaintiff is Clare Trevarthen.

2. Defendants are Nationstar Mortgage LLC, Auction.com, Jeremiah McClain, Pamela Cirkiel, Shamica Thomas, Helen G. Kinneman.

3. September 5, 2014 Defendant Nationstar Mortgage LLC filed its Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever.

4. October 1, 2014 Plaintiff filed her response to Nationstar Mortgage LLC's Motion.

5. October 6, 2014 Defendant Nationstar Mortgage LLC filed its reply to Plaintiff's Response.

6. October 8, 2014 Plaintiff filed her response to Nationstar Mortgage LLC's Motion.

7. November 10, 2014 this court signed its "Final Order Granting Defendant Nationstar Mortgage LLC's Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever".

8. Plaintiff desires to appeal and files this notice.

9. The appeal is taken to the Third Court of Appeals.

10. A copy of the order to be appealed is attached as "Attachment 1."

Envelope# 3362415

11. This notice is filed within 30 days of this court's issuance of its judgment.

**RESPECTFULLY SUBMITTED,**

David Rogers, Attorney at Law
1201 Spyglass, Suite 100
Austin, TX 78746
(512) 923-1836
(512) 201-4082 (fax)
DARogers@aol.com

*/s/David Rogers*_____
David Rogers
State Bar #24014089
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

Pursuant to Texas Rules of Civil Procedure, a true and correct copy of the foregoing has been sent on this the 3rd day of December, 2014 to counsel for all parties of record.

B. David L. Foster
John W. Ellis
Locke Lord LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701

*/s/David Rogers*_____
David Rogers
State Bar #24014089
Attorney for Plaintiff

Attachment 1

CAUSE NO. 14-0187-C26

| | | |
|---|---|---|
| CLARE TREVARTHEN<br>*Plaintiff,* | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | |
| | § | 26th JUDICIAL DISTRICT |
| NATIONSTAR MORTGAGE LLC,<br>AUCTION.COM, JEREMIAH<br>MCCLAIN, PAMELA CIRKIEL,<br>SHAMICA THOMAS, HELEN G.<br>KINNEMAN | §<br>§<br>§<br>§<br>§ | WILLIAMSON COUNTY, TEXAS |
| *Defendants.* | § | |

## FINAL ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER

On this day, the Court considered the Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever (the "Motion") filed by Defendant Nationstar Mortgage LLC ("Nationstar") and the Objections to Plaintiff's Summary Judgment Evidence filed by Nationstar ("Nationstar's Objections"). After careful consideration of the Motion and Nationstar's Objections. any timely responses thereto, the competent evidence, all pleadings properly before the Court, the arguments of counsel, if any, and all other matters properly before the Court, the Court rules as follows:

Nationstar's Motion is GRANTED, and Plaintiff Clare Trevarthen shall take nothing by her claims against Defendant Nationstar Mortgage LLC.

Nationstar's Objections are SUSTAINED and Plaintiff's Exhibit A, Exhibit B, Exhibit D, Exhibit E, Exhibit F, Exhibit G, Exhibit H, Exhibit K, Exhibit L, Exhibit N, Exhibit O, Exhibit P, Exhibit Q, Exhibit R, Exhibit S, Exhibit T, Exhibit X, Exhibit AA, Exhibit BB, and Exhibit CC are stricken from the summary judgment record.

**FILED**
at 8:45 o'clock A M
NOV 14 2014
District Clerk, Williamson

FINAL ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER
AUS:0103793/00150:560185v1

PAGE 1 OF 2

**APPEALS INDEX**

INDEX TO 14-0187-C26

CLARE TREVARTHEN V. NATIONSTAR MORTGAGE, LLC    §    IN THE DISTRICT COURT

§

§    26TH JUDICIAL DISTRICT COURT

§

§    WILLIAMSON COUNTY, TEXAS

Cover Letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Docket Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Case Summary Sheet

01 Plaintiff's Original Petition, Filed 03-03-14

02 Defendant's Original Answer, Filed 04-01-14

03 Plaintiff's First Amended Petition, Filed 04-03-14

04 Plaintiffs' Request for Issuance of New Citations, Filed 04-03-14

05 Defendant Helen G. Kinneman's Original Answer, Affirmative Defenses in Inferential Rebuttal, Filed 05-08-14

06 Notice of Appearance, Filed 05-08-14

07 Defendant Heen Kinneman's Original Answer, Affirmative Defenses and Inferential Rebuttal, Filed 05-08-14

08 Notice of Appearance, Filed 05-08-14

09 Certificate of Written Discovery, Filed 05-08-14

10 Certificate of Written Discovery, Filed 05-08-14

11 Defendant Shamica Thomas' Original Answer, Filed 05-13-14

12 Defendant Auction.com's Original Answer, Filed 05-16-14

13 Special Appearance of Jeremiah McClain and Answer Subject Thereto, Filed 05-16-14

14 Plaintiff's Notice of Non Suit, Filed 06-30-14

15 Defendant Nationstar Mortgage LLC's Traditional and No-Evidence Motion for summary Judgment and Motion to Sever, Filed 08-29-14

16 Plaintiff's Response to Defendant Nationstar Mortgage LLCs Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever, Filed 10-01-14

17 Defendant Nationstar Mortgage LLC's Reply in Support of its Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever and Response to Plaintiff's Objections, Filed 10-06-14

18 Defendant Nationstar Mortgage LLC's Objections to Plaintiff's Summary Judgment Evidence, Filed 10-06-14

19 Plaintiff's Sur-Reply to Defendant Nationstar Mortgage LLC's Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever, Filed 10-08-14

20 Final Order Granting Defendant Nationstar Mortgage LLC's Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever, Signed 11-10-14

22 Plaintiff's Notice of Appeal, Filed 12-03-14

Bill of Cost

Clerks Certificate

Plaintiff's claims against the Nationstar are SEVERED from this lawsuit. It is further ordered that the Clerk of the Court shall assign the severed cause the cause number

_14-1096 C26_.

It is further ordered that all costs are taxed against Plaintiff.

This judgment finally disposes of all claims by Plaintiff against Defendant Nationstar Mortgage LLC and is appealable.

SIGNED this the _10_ day of _November_, 2014.

_____
BILLY RAY STUBBLEFIELD, DISTRICT JUDGE

AGREED AS TO FORM:

_____
B. David L. Foster
Texas Bar No. 24031555
John W. Ellis
Texas Bar No. 24078473
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Facsimile)
ATTORNEYS FOR DEFENDANT
NATIONSTAR MORTGAGE LLC

_____
David Rogers
Texas Bar No. 24014089
1201 Spyglass, Suite #100
Austin, Texas 78746
(512) 923-1836
(512) 201-4082 (Facsimile)
ATTORNEY FOR PLAINTIFF CLARE
TREVARTHEN

FINAL ORDER GRANTING DEFENDANT NATIONSTAR MORTGAGE LLC'S TRADITIONAL
AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER
AUS:0103793/00150:560185v1

PAGE 2 OF 2



STATE OF TEXAS
COUNTY OF WILLIAMSON
CERTIFIED TO BE A TRUE AND CORRECT COPY
OF THE ORIGINAL IN MY CUSTODY
GIVEN UNDER MY HAND AND SEAL OF OFFICE
DATE _____ AD, 20___

LISA DAVID
DISTRICT CLERK OF WILLIAMSON COUNTY
BY _____ DEPUTY



No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 12

ITEM 12    Excerpts from hearing October 7, 2014        RR page 18-31

And, finally, we do have objections that we filed, your Honor, in response -- regarding plaintiff's response. Plaintiff attached 20 some-odd exhibits to their response as well as three verifications by the plaintiff. But the exhibits attached are not referenced in any of the verifications, and there is no authentication to prove these exhibits up. So, our objection, your Honor, is that the Court strike all the exhibits which have not been properly authenticated that were attached to plaintiff's response. That was in Tab 4, the last Tab 4, in our motion in the notebook today. There's a copy of those objections.

Thank you, your Honor.

THE COURT: Thank you.

Mr. Rogers.

MR. ROGERS: Your Honor, is there some evidence? The demonstrative exhibits that the Court has here in front of it show that there is some evidence. These are arranged chronologically. There's a key here at the top to tell you who is who because, frankly, you can't tell the players in this case without a scorecard.

The first thing that Mr. Ennis (sic) said was that the borrower sued the lender, while later he said the lender was Meridias Capital. Meridias Capital is not a party to this lawsuit, your Honor. And keeping track of who is who is the fundamental problem that my client has had all along

because in her effort to get a modification where she sent many, many payments, evidence of which is included in the records specifically testified to in her verification -- her declaration, unlike what you might gather from reading the response -- "Trevarthen only made three payments."  Well, we've got evidence there that during the modification period she made at least 17 payments.

Was she in default?  I would say that there is a fact question there.  Certainly there is far more evidence of payment introduced than has been acknowledged by Nationstar which brings me to another question.  Who is Nationstar?  And what is their interest in the property?  I thought I knew the answer to that question, your Honor.  The reason that I thought I knew the answer to that question was that in a prior case we had a declaration by the same woman who has made a declaration in this case.  And that declaration was very definitive.

MR. ELLIS:  Your Honor, just to be clear, the documents he's referring to in the response are -- this document is one of the many that is not properly authenticated.  That's part of our objection.

MR. ROGERS:  Your Honor, if for some reason the Court doesn't want to take notice of what we've got attached to our response, we would ask that the Court take judicial notice of the declaration attached to their prior motion for

summary judgment in the 368th District Court last October, your Honor. We are just bringing that declaration to the Court's attention. We've got that attached to our response as Exhibit X. That declaration of Kristen Trompisz, T-r-o-m-p-i-s-z, and it's Kristen, K-r-i-s-t-e-n, says in Paragraph 3, "On June 29, 2012, Aurora Loan Services, LLC, was acquired by Nationstar Mortgage, LLC." It seems very clear.

All of the rights and liabilities of Aurora, LLC, were acquired by Nationstar on June 29, 2012. Based on that in large part, we dismissed our prior lawsuit because Nationstar wasn't a defendant in the prior lawsuit, and we thought, okay, we've got to figure out what these relationships are, you know, who, you know -- we've got to name Nationstar, all of our claims now that we had against Aurora would be good against Nationstar because Nationstar acquired all the rights and responsibilities.

MR. ELLIS: Objection, your Honor. I'm just -- make sure I'm reading from the same document. It says -- are we reading at Paragraph 8?

MR. ROGERS: Exhibit X, Paragraph 3.

MR. ELLIS: Paragraph 3. Just for rules of optional completeness, that paragraph states on June 29, 2012, Aurora Loan Services, LLC, was acquired by Nationstar Mortgage, LLC, end paragraph.

MR. ROGERS: That's -- that's exactly what I

said.

MR. ELLIS:  The rest is attorney argument.

MR. ROGERS:  And then we get our motion for summary judgment this year in this case.  And the exact same person swears to something materially different.  Again, it's Paragraph 3, and it's -- and it's the first exhibit attached to their motion for summary judgment.  "On June 29, 2012, Nationstar Mortgage, LLC, acquired a substantial amount of Aurora Loan Services, LLC's, assets, including the servicing rights to the loan."  Your Honor, that's the difference between saying, "I bought the restaurant" and "I bought a hamburger."

We don't know suddenly, because this woman changed her testimony a year later, what the relationship between Aurora and Nationstar is.  We would like to be granted an opportunity to engage in discovery to find out which statement, if either, is true.  But it's clear they can't both be true.  Either Nationstar bought all of Aurora or Nationstar bought part of Aurora.  But they can't buy all of it and just buy part of it.  It's a hamburger, or it's the whole restaurant.  So, essentially, your Honor, one or the other of those declarations is perjured.  And we would ask that the entire declaration be thrown out.  And once that declaration is thrown out, then they've got no evidence.

At the beginning of this process in 2006, Ms.

Trevarthen -- Mrs. Trevarthen took out an interest-only note for $136,000.00 from Meridias Capital. And one of the things that we got from the other side in the prior litigation was a MERS Milestone Report. MERS was a defendant in the prior litigation. We asked them to produce that. "What is it that you show happened to the note and the debt and the debt and the deed of trust over time?"

And it turns out that what MERS believes happened and what is reflected by the letters to my client and by the public record are not the same. Everyone agrees that there was a note and deed of trust that was signed on or about December 28, 2006. Now, the MERS system shows that there was a registration there, Meridias Capital, same day. Seems fine so far. And then there's a transfer of beneficial rights from MERS to what we've designated as ALS Number 1 which is Aurora Loan Services, LLC. At that point Aurora Loan Services, LLC, is designated as the investor or common parlance, the owner of the note and deed of trust. So far, so good.

Our client gets a notice of an assignment of sale and servicing rights, and this is included as our Exhibit P, but it's also included in their exhibits, that says that Florez Consulting Company has transferred the servicing rights to Aurora Loan Services. Whether it's Aurora Loan Services, Inc., or Aurora Loan Services, LLC, or Aurora Loan Services FSB, we don't know. It's not clearing in the document.

But what is mystifying is: Who is Florez Consulting Company? And where did they get any rights to transfer anything to ALS? There's no evidence anywhere in the record that these people even had any rights to transfer to ALS. Florez Consulting Company is not Meridias Capital. So this first transfer here of servicing rights may be a bogus transfer, and it doesn't involve MERS at all.

Then MERS says there's a transfer of the flow servicing rights, whatever those are, from Meridias Capital to Aurora Bank, FSB. Okay. So the beneficial rights and the flow servicing rights are transferred to two different entities according to MERS.

But, also, it says in the MERS document that Aurora Bank, FSB, is the servicer and that Aurora Loan Services, LLC, is the subservicer. And then, according to MERS, the next document, -- and we've got this bracketed because they're connected. It's a transfer of the same item. -- there's a transfer of flow servicing rights from Aurora Loan Services, LLC. Well, wait a minute. Aurora, FSB, is the party that has those rights according to the prior MERS document. But now somebody who doesn't have the rights is transferring them to Lehman Brothers Holding. And Lehman Brothers Holding is the servicer.

Okay. Then there's a transfer of beneficial rights. Now, last time we checked, the beneficial rights were

in Aurora Loan Servicing, LLC. They're transferred by them to Bank of America as trustee. Bank of America, as trustee, is designated as the investor, again, according to the MERS document.

Then there is a release of interim funder interest by UBS Warburg, the New York Investment Bank. Not clear where they came in, but they've released whatever they had. And then this beneficial rights which was in the hands of B of A here is transferred by ALS again. Wait a minute. They already gave away all their rights, but now they're transferring rights they don't have to Wilmington Trust Company. Again, these are all admitted by MERS in their Milestone report.

All this green stuff is invisible to my client and invisible to the outside world. This is MERS. This is the black box. Nobody in the outside world knows about that. What we know about is the letters and the things that are in the public record.

So my client gets a letter December 15, 2008, from Michael J. Schroeder, P.C. He claims in that letter that Aurora Loan Services is the servicer, and Aurora Loan Services, LLC, is the owner and the holder, identifies one as the LLC, one as Aurora Loan Services, obviously some different company, probably Aurora Loan Services, Inc., but maybe he means Aurora, FSB. We don't know. And that confusion

continues throughout the whole train of this -- of this loan.

Okay. And then a few months later my client gets a letter, notice of default, from Aurora Loan Services. Doesn't say if it's LLC or INC or FSB. And this claims now that Aurora Loan Services which was the servicer previously is now the debt collector and that LXS 20007-6 is the mortgagee. No indication of a transfer to LXS 2007-6.

We get a letter notice of trustee sale, again, from Mr. Schroeder. He identifies the same to ALS entities as servicer and owner and holder that he identified before which is different than who ALS described as the mortgagee in the letter two months prior.

Two weeks later in response to a qualified written request which is a letter that's authorized under Federal statutes to enable borrowers to find out from lenders and servicers, "What's going on with my loan? Who owns it? Who do I have to pay? What's going on?" because, obviously, my client having received these letters, doesn't know who's who. She knows that's inconsistent, so she gets a response to the QWR from Carl Washer, LLP. And they identify LXS 2007 as the owner of the note, ALS as the servicer, master and subservicer. So this is a different company than that. And the owner of the note is not the one that was identified two weeks prior by MJS. My client gets this QWR response, and all it does is compound the confusion. At this point, I dare

anybody to tell me who the owner of the note is. Certainly Aurora is making contradictory claims.

January of 2011, my client gets a notice of default from Aurora Loan Services, LLC. In that notice of default, they identify the LXS, this LXS 2007-6, as the mortgagee. Okay. So now we've got the mortgagees going Ping-Pong back and forth between ALS Number 1 and LXS and Bank of America. Maybe there is a relationship between Bank of America and this trust. We don't know.

My client gets a notice of substitute trustee sale. This is now the third notice of substitute trustee sale she's gotten from Naomi Feistel. And that says LXS isn't the mortgagee anymore. It's Aurora Loan Services, not the LLC. The LLC is the servicer. Then we get some action in the public records. MERS transfers to ALS Number 1 making ALS Number 1 the mortgagee. That's the LLC.

Then there is an appointment of the substitute trustee. For the first time, there's an appointment of substitute trustee. So all of these prior notices of trustee sale were all done completely without authorization. They're completely Illegal. And these, there's never even any attempt to ratify the Schroeder letters.

Now, if Schroeder is Aurora's agent, then Aurora is liable for this. If Nationstar bought Aurora lock, stock, and barrel, Nationstar is liable. If Nationstar bought part

of Aurora but didn't assume their liabilities, then maybe we've got the wrong defendant, and Nationstar is in here defending somebody else. And, as your Honor is well aware, I can't defend a third party without being engaged on behalf of that third party.

And Aurora Loan Services is not even named in this suit, again, because of the prior affidavit, the prior declaration from October of last year, "Aurora Loan Services has been taken over in its entirety by Nationstar," which now apparently isn't true.

So we've got musical mortgagees. Finally a substitute trustee is named. We get a notice of trustee sale. And again the mortgagee changes. So Aurora Loan Services -- Aurora Loan Services, LLC, is just the servicer. So here in the space of five months we get five different parties claiming to be the mortgagee.

My client sends another QWR letter because she's confused. We get a response in May from another law firm on behalf of Aurora Loan Services, LLC. Now we've got a trustee, and the LXS Trust is the owner of the debt. The owner of the debt, or, in other words, the mortgagee has now changed again.

This comes from the MERS report. Frankly, I don't know what "transfer of seasoned rights means," but that's what happens there. And ALS transfers the rights that had previously been assigned to Lehman Brothers Holding to

itself. Lehman Brothers doesn't transfer those rights. ALS transfers it on their own. Three days later ALS, LLC, forecloses on my client.

Now, opposing counsel says, "Well, all of this is about MERS, the challenge to the MERS system." And I will admit I think the MERS system doesn't comply with Texas law. We have some argument about that. The Texas Supreme Court has never affirmed that it does. We have some extensive briefing about choces in action and how all of that relates. We look at the 2007 Daughters of Charity Case where the Supreme Court says you can't separate liens and debts. They travel together.

But leaving that aside for the moment, let's say all of this MERS stuff is just hunky-dory. Here's the problem. We have a foreclosure on June 6th. Somebody else is the mortgagee on May 10th. Someone else is the owner of the debt on May 10th. Let's assume that there is a transfer from LXS on the very same day, even though it's not reported in the property records anywhere. There's no evidence that it happens, but let's say that the owner of the debt changes later on the 10th from the LXS Trust to Aurora Loan Services.

In order to foreclose, both the deed of trust and the statute require that the foreclosing party send out two notices. The minimum time required for the two notices is 50 days under the statute, 60 days under the deed of trust.

There are not 50 days or 60 days between these two dates.

This admission by Aurora Loan Services that someone else is the owner of the debt on this date, someone else who has never instructed my client to pay them, by the way, and we've got a declaration on that -- LXS 2007-6 never sent a "Pay Aurora" notice to my client. And, obviously, at this point they were the current mortgagee, according to Aurora Loan Services.

In order for Aurora to qualify under the statute as a statutory mortgage servicer who is allowed to administer a foreclosure on behalf of another party, the current mortgagee must send a notice to the mortgagor instructing them to pay the mortgage servicer. Without that, the mortgage servicer cannot administer the foreclosure. Why? Because with confusion like this, unless you get a notice from the owner of the note, the person entitled to collect the debt, you don't know who these people are and what their relationship to what's going on is. Is Aurora, LLC, pulling a fast one? Or is Aurora, FSB, pulling a fast one? Or is Aurora, Inc., pulling a fast one? I think they're all at the very least -- a charitable characterization of this is they are confused about who owns what and who has what rights.

And they admitted inside the window that Aurora Loan Services, LLC, was not a party entitled to collect or the party entitled to foreclose. So even if all of the MERS stuff

is perfectly fine and even if there's an invisible MERS assignment right here, they fail the test under Property Code 51, and the foreclosure is void.

There's a substitute trustee's deed, foreclosure by Aurora Loan Services. But Aurora Loan Services now is claiming to be the mortgagee. On the notice, though, it was Aurora Loan Services, not Aurora Loan Services, LLC, that was claiming to be the mortgagee. They can't keep their story straight. Well, your Honor, I submit that if you tell the truth, you have less to remember.

Now, if the foreclosure actually happened, the debt ceases to exist because it's been satisfied by the foreclosure. The amount on the foreclosure that was bid in was $157,000.00 on a $136,000.00 note. So why does my client get a welcome notice that says, "We've transferred your loan servicing rights. Pay Aurora Loan Services, FSB. They'll be accepting payments"? On what debt exactly?

This is an admission by a party opponent, your Honor, that this foreclosure is no good. Now, the MERS internal documentation tries to catch up in February of the next year. They say they completely reversed the foreclosure. They updated the mortgage information, and then they completed the foreclosure all in the same day. And the effect of that is somehow to make Aurora, FSB, the new subservicer. But they undid the foreclosure seven months later on one day. No

notice was ever sent to anybody. And then they redid the foreclosure. I'm pretty sure if you're going to do a foreclosure in Texas you have to send some notices and send somebody down to the courthouse and file something in the public records. None of that happened.

Then four months later my client gets a letter transferring the servicing rights, the servicing rights on the note that doesn't exist. Or maybe the note does exist because the foreclosure didn't happen. Again, your Honor, this is an admission by a party opponent that the foreclosure didn't happen because if the foreclosure happened there would be no loan servicing rights to transfer to Aurora, FSB.

And then we get this declaration from Ms. Trompisz the day before Halloween last year. She says Aurora Loan Servicing -- Aurora Loan Services, LLC, is Aurora Loan Services and that Aurora Loan Services, LLC, was acquired in its entirety by Nationstar. Ten months later she says that's not true.

I submit, your Honor, there is a fact issue in here somewhere. And summary judgment is inappropriate. And it would be inappropriate for the Court to accept the declaration of someone who has shown herself to have perjured herself in her declarations in this courthouse.

THE COURT: All right. I have a dental appointment in 15 minutes, and I have to leave. If you want

No. 03-15-00011-CV

## IN THE THIRD COURT OF APPEALS OF TEXAS

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.**
**Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

## APPENDIX ITEM 13

ITEM 13     Declaration of Kristen Trompisz

| | | |
|---|---|---|
| GRANT TREVARTHEN and | § | IN THE DISTRICT COURT |
| CLARE TREVARTHEN, | § | |
| _Plaintiffs,_ | § | |
| | § | |
| v. | § | |
| | § | |
| MORTGAGE ELECTRONIC | § | WILLIAMSON COUNTY, TEXAS |
| REGISTRATION SYSTEMS, INC. | § | |
| (MERS), MERIDIAS CAPITAL, INC., | § | |
| CAL-WESTERN RECONVEYANCE | § | |
| CORP., AURORA LOAN SERVICES, | § | |
| INC., NAOMI FEISTEL, and JUANITA | § | |
| STRICKLAND, | § | |
| _Defendants._ | § | 368TH JUDICIAL DISTRICT |

## <u>DECLARATION OF KRISTEN TROMPISZ</u>

1. I, Kristen Trompisz, make this Declaration pursuant to section 132.001 of the Texas Civil Practice & Remedies Code. I am over the age of twenty-one (21), have never been convicted of a felony or crime involving moral turpitude and am fully competent to provide this testimony. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2. Until September 7, 2012, I was employed as a Legal Liaison for Aurora Loan Services, LLC. ("Aurora"). Aurora maintained hard copy and electronic files (the "Loan Records") of acts, transactions, payments, communications, escrow account activity, disbursements, events, documents, instruments, and analyses (the "Loan Transactions") with respect to the mortgage loans that Aurora serviced. Entries regarding Loan Transactions in the Loan Records were made at the time of the Loan Transactions either by people with first-hand knowledge of Loan Transactions or from information provided by people with such first-hand knowledge. The Loan Records were maintained in Aurora's regular course of business. I had access to the Loan Records and I have knowledge of how they were maintained.

3. On June 29, 2012, Aurora Loan Services, LLC. was acquired by Nationstar Mortgage, LLC.

4. Since February 11, 2013, I have been, and am currently employed as a Litigation Resolution Analyst for Defendant Nationstar Mortgage LLC ("Nationstar"). Nationstar maintains hard copy and electronic files (the "Loan Records") of acts, transactions, payments, communications, escrow account activity, disbursements, events, documents, instruments, and analyses (the "Loan Transactions") with respect to the mortgage loans that Nationstar services. Entries regarding Loan Transactions in the Loan Records are made at the time of the Loan Transactions either by people with first-hand knowledge of Loan Transactions or from information provided by people with such first-hand knowledge. The Loan Records are maintained in Nationstar's regular course of business. I have access to the Loan Records and I have knowledge of how they are maintained.

5. In my referenced capacity, I have had the opportunity to review the Loan Records related specifically to the loan Clare Trevarthen obtained that is secured by the real property located at 1202 Mahogany Lane, Cedar Park, Texas, 78613 (the "Property"). Based upon the Loan Records, I have gained knowledge of the facts set forth herein and, if called upon as a witness to testify, could and would competently testify as to those facts under penalty of perjury. The information and documents described herein, referenced below, and/or attached hereto are found in the Loan Records.

6. The Loan Records reflect that on December 27, 2006, Plaintiff Clare Trevarthen executed a Note (the "Note") in the amount of $136,000.00 payable to Meridias Capital, Inc. ("Meridias").

7. The Loan Records reflect that on December 27, 2006, Plaintiff Clare Trevarthen and Plaintiff Grant Trevarthen, "signing pro forma to perfect lien only" also executed a Deed of

Trust. The transaction evidenced by the Note and Deed of Trust is referred to herein as the "Loan." The Deed of Trust grants the lender a security interest in the Property.

8. The Loan Records reflect that Aurora Loan Services or a related entity has acted as the Loan's mortgage servicer since March 1, 2007. "Aurora Loan Services" and "Aurora Loan Services, LLC" are both references to "Aurora Loan Services, LLC." They are the same entity.

9. The Loan Records reflect that Plaintiff stopped making payments on the Loan. Plaintiff's failure to make payments constituted a default on the Note. The Loan Records reflect that Aurora Loan Services entered three Special Forbearance Agreements with Plaintiff Clare Trevarthen, but that she failed to make payments timely under the terms of each Special Forbearance Agreement and bring the Loan current.

10. Exhibit 1.A., attached hereto, is a true and correct copy of the Note. The copy of the Note is a true and correct copy of the original document.

11. Exhibit 1.B., attached hereto, is a true and correct copy of a second Note in the amount of $17,000.00, payable to Meridias Capital Inc., also executed by Plaintiff on December 27, 2006.

12. Exhibit 1.C attached hereto, is a true and correct copy of the Loan Servicing Disclosure Statement executed by Clare Trevarthen on December 28, 2006.

13. Exhibit 1.D is a true and correct copy of a Notice of Assignment, Sale, or Transfer of Servicing Rights that Aurora sent to Clare Trevarthen at her mailing address on February 16, 2007.

14. Exhibit 1.E is a true and correct copy of a welcome letter sent by Aurora to Clare Trevarthen at her mailing address on July 6, 2011.

15. Exhibit 1.F is a true and correct copy of a welcome letter sent by Aurora to Clare Trevarthen at her mailing address on June 15, 2012.

16. Exhibit 1.G is a true and correct copy of a Special Forbearance Agreement between Clare Trevarthen and Aurora dated December 16, 2008.

17. Exhibit 1.H is a true and correct copy of a Special Forbearance Agreement between Clare Trevarthen and Aurora dated July 10, 2009.

18. Exhibit 1.I is a true and correct copy of a Special Forbearance Agreement between Clare Trevarthen and Aurora dated September 22, 2010.

19. These records were formerly maintained by Aurora in the regular course of business, and it was the regular course of business of Aurora for an employee or representative with knowledge of the act or event recorded to make or keep the record, and these records were made or kept at or near the time of the act or event, or reasonably soon thereafter.

My name is Kristen Trompisz, my date of birth is August 28, 1969, and my business address is 350 Highland Drive, Lewisville, Texas 75067. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of October, 2013.

KRISTEN TROMPISZ

# EXHIBIT 1A


ᴜ●CY TITLE CC;;PANY
CERTIFIES THAT THIS IS A
TRUE AND CORRECT COPY

MIN: 100256014000672964      Loan Number: 1400067296

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

DECEMBER 27, 2006      SALT LAKE CITY      UTAH
[Date]                 [City]             [State]

1202 MAHOGANY LANE, CEDAR PARK, TEXAS 78613
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $136,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is MERIDIAS CAPITAL, INC., A NEVADA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on FEBRUARY 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at DEPT. 9664, LOS ANGELES, CALIFORNIA 90084-9664

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 927.76 . This amount may change. ** See attached Interest Only Note Addendum.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT      Page 1 of 5

Form 3520 1/01
DocMagic *eRsmms* 800-649-1362
*www.docmagic.com*

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  1st  day of JANUARY, 2012          , and on that day every  6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND 750/1000                        percentage points (          2.750  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          13.250 % or less than          7.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                        percentage point(s) (          2.000     %) from the rate of interest I have been paying for the preceding  6      months. My interest rate will never be greater than          13.250 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 2 of 5

Form 3520 1/01
DocMagic *eForms* 800 649-1362
www.docmagic com

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 3 of 5

Form 3520 1/01
DocMagic *CForms* 800-649-1362
www.docmagic.com

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if· (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                Page 4 of 5

Form 3520 1/01
DocMagic *EFormxs* 800-649-1362
*www.docmagic.com*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Clare Trevarthen_ (Seal)                    _____ (Seal)
CLARE  TREVARTHEN          -Borrower                                              -Borrower

_____ (Seal)              _____ (Seal)
                                  -Borrower                                              -Borrower

_____ (Seal)              _____ (Seal)
                                  -Borrower                                              -Borrower


PAY  TO  THE  ORDER  OF:
 WITHOUT  RECOURSE

MERIDIAS  CAPITAL,  INC.,  A  NEVADA  CORPORATION

BY:  _____

ITS:

*[Sign Original Only]*

**EXHIBIT 1B**

GRACY TITLE COMPANY
CERTIFIES ⬤ AT THIS IS A
TRUE AND CORRECT COPY


MIN: 100256014000672972    **NOTE**    Loan Number: 1400067297

THIS NOTE IS A CONTRACT FOR A SHORT-TERM LOAN. THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOUR INTEREST RATE AND TERMS WILL BE AT THE PREVAILING INTEREST RATE, WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

DECEMBER 27, 2006        SALT LAKE CITY            UTAH
   Date                         City                  State

          1202 MAHOGANY LANE, CEDAR PARK, TEXAS 78613
Property Address                City               State         Zip Code

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $17,000.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is MERIDIAS CAPITAL, INC., A NEVADA CORPORATION

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of 14.500 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 208.17
I will make my payments on the 1st day of each month beginning on FEBRUARY 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on JANUARY 1, 2022 , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at DEPT. 9664, LOS ANGELES, CALIFORNIA 90084-9664

                                 or at a different place if required by the Note Holder

---

TEXAS - SECOND MORTGAGE - 1/80
Form 75 (TX) Rev 7/97               Page 1 of 3               DocMagic EForms 800 649-1362
                                                               www.docmagic.com

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder unless the assessment of a late charge is otherwise prohibited by applicable law. If authorized by applicable law, the amount of the charge will be 5.000 % of my overdue payment, but not less than U.S. $ N/A and not more than U.S. $ N/A . I will pay this late charge only once on any late payment.

### (B) Notice From Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default.

If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated DECEMBER 27, 2006 , protects the Note Holder from possible losses which might resultif I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"), (B) to give notice that amounts due have not been paid (known as "notice of dishonor"), (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers "

TEXAS - SECOND MORTGAGE - 1/80
Form 75 (TX) Rev 7/97                                        Page 2 of 3                          DocMagic *eForms* 800-649-1362
www.docmagic.com

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.


_____ (Seal)          _____ (Seal)
CLARE TREVARTHEN            -Borrower                                                        -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                                        -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                                        -Borrower


PAY TO THE ORDER OF:
WITHOUT RECOURSE

MERIDIAS CAPITAL, INC., A NEVADA CORPORATION

BY: _____

ITS: _____

# EXHIBIT 1C

MERIDIAS CAPITAL, INC.
990 WEST ATHERTON DRIVE
SALT LAKE CITY, UTAH 84123                     Loan Number: 1400067296

# LOAN SERVICING DISCLOSURE STATEMENT

NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 et seq.) you have certain rights under that Federal Law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## TRANSFER PRACTICES AND REQUIREMENTS

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect-call telephone number of the new servicer, and toll-free or collect-call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## COMPLAINT RESOLUTION

Section 6 of RESPA (12 U.S.C § 2605) gives you certain consumer rights, whether or not your loan servicing is transferred If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## DAMAGES AND COSTS

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## SERVICING TRANSFER ESTIMATED BY LENDER

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

_____We are able to service your loan and presently intend to do so.

__XX___We do not service mortgage loans and we presently intend to assign, sell, or transfer the servicing of your mortgage loan. You will be informed about your servicer.

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is between· 76 – 100%

This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. This is our record of transferring the servicing of the mortgage loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED |
|------|---------------------------------|
| 2003 | 100.00% |
| 2004 | 100.00% |
| 2005 | 100.00% |

This information ☒ does  ☐ does not include assignments, sales or transfers to affiliates or subsidiaries.

MERIDIAS CAPITAL, INC.

_____          DECEMBER 27, 2006
Lender's Authorized Representative         Date

LOAN SERVICING DISCLOSURE STATEMENT
02/12/04                                   Page 1 of 2                      DocMagic eForms 800-649-1362
                                                                           www.docmagic.com

## ACKNOWLEDGMENT OF MORTGAGE APPLICANT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application

_Clare Trevarthen_ 12-28-06

| | |
|---|---|
| Applicant's Signature | Date |
| CLARE TREVARTHEN | |

| | |
|---|---|
| Applicant's Signature | Date |

| | |
|---|---|
| Applicant's Signature | Date |

| | |
|---|---|
| Applicant's Signature | Date |

| | |
|---|---|
| Applicant's Signature | Date |

| | |
|---|---|
| Applicant's Signature | Date |

No. 03-15-00011-CV

---

**IN THE THIRD COURT OF APPEALS OF TEXAS**

---

**Clare Trevarthen**
**Appellant**

**v.**

**Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G. Kinneman; Jeremiah McClain and Shamica Thomas**
**Appellees**

---

**Appeal from the District Court of Williamson County, TX**
**Trial Court No. 14-0187-C26**

---

**APPENDIX ITEM 14**

---

ITEM 14     Exhibit chart

# TREVARTHEN / MAHOGANY

Aurora Bank FSB .....................AB
Aurora Loan Services, LLC ......ALS#1
Aurora Loans Services ............ALS#2
Bank of America ....................BofA
Cal-Western Recon. Corp. .......C-W
Naomi Feistel..........................Feistel

Florez Consulting Company ....FLO
LaSalle Bank Ntl. Assoc. .........LS
Lehman Brothers Holdings .....LBH
Lxs 2007-6 ............................LXS
Meridias Capital ....................MC
McGinnis Tessitore Wutscher ......MTW

Nationstar Mortgage, LLC.......NM
Michael J. Schroeder, P.C.........MJS
Juanita Strickland ..................STR
UBS Warburg .........................UBS
Wilmington Trust Co..............WTC
Kahrl Wutscher LLP................KW

**BENEFICIAL RIGHTS**
**FLOW SERVICING RIGHTS**
**INVESTOR**
**MORTGAGEE**
**OWNER**
**SERVICER**
**SUSTITUTE TRUSTEE**

Exhibit A  MERS Milestone Report          Exhibits B − BB

| DATE/EXHIBIT | DOCUMENT TYPE | FROM | TO | CLAIM |
|---|---|---|---|---|
| 12-28-2006 / B (Note) C (DOT) | Note & Deed of Trust | Trevarthen | MC | MC = Mortgage<br>MERS = Beneficiary<br>Note = $136K |
| 12-28-2006 | Registration | MC | | MC = Servicer |
| 2-14-2007 | Trans. Beneficial Rights | MC | ALS#1 | ALS = Investor |
| 2-16-2007 / P | Notice of ASN/Sale Servicing | FLO | ALS#2 | ALS#2 = Servicer |
| 6-18-2007 | Trans. Flow Servicing Rights | MC | AB | AB = Servicer<br>ALS#1 = Subservicer |
| 6-21-2007 | Trans. Flow Servicing Rights | ALS#1 | LBH | LBH = Servicer |
| 7-2-2007 | Trans. Beneficial Rights | ALS#1 | BofA as Trustee | BofA as Trustee = investor |
| 10-15-2007 | Release Interim Funder Interests | UBS | | |
| 12-10-2008 | Trans. Beneficial Rights | ALS#1 | WTC | WTC = investor |
| 12-15-2008 / D | Ltr / Notice Trustee's Sale | MJS | Trevarthen | ALS#2 = Servicer<br>ALS#1 = Owner/Holder |
| 7-26-2010 / E | Ltr / Notice of Default | ALS#2 | Trevarthen | ALS#2 = Debt Collector<br>Lxs 2007-6 = Mortgagee |
| 9-13-2010 / F | Ltr / Notice Trustee's Sale | MJS | Trevarthen | ALS#2 = Servicer<br>ALS#1 = Owner/Holder |
| 9-28-2010 / G | Letter response to QWR | KW | Trevarthen | LS = Owner of note<br>ALS#1 = Servicer,<br>Master & Sub-servicer |

| DATE/EXHIBIT | DOCUMENT TYPE | FROM | TO | CLAIM |
|---|---|---|---|---|
| 1-14-2011 / AA | Notice of Default | ALS#1 | Trevarthen | LXS = Mortgagee |
| 3-4-2011 / H | Notice of Sub. Sale | Feistel c/o C-W | Trevarthen | ALS#2 = Mortgagee<br>ALS#1 = Servicer |
| 3-7-2011 / I | Assignment of DoT | MERS | ALS#1 | ALS#1 = Mortgagee |
| 4-11-2011 / J | Apt. Sub. Trustee (FIRST TIME) | ALS#2 | STR, Feistel, et.al. | ALS#2 = Mortgagee |
| 5-3-2011 / L | Notice of Sub. Trustee Sale | Feistel c/o C-W,<br>for ALS#1 | Trevarthen | ALS#2 = Mortgagee<br>ALS#1 = Servicer |
| 5-10-2011 / K | Ltr response to QWR | MTW for ALS#1 | Trevarthen | WTC as Trustee for<br>LXS = Owner of "the debt" |
| 6-3-2011 | Transfer Seasoned | ALS#1 | ALS#1 | ALS#1 transfers LBH<br>rights to itself |
| 6-8-2011 | Foreclosure Complete | ALS#1 | | Foreclosure completed<br>6-6-2011 |
| 6-13-2011 / M | STD | STR for ALS#1 | | Foreclosure by ALS#1,<br>sold to ALS#1<br>$157,110.55<br>ALS#1 = Mortgagee |

**DEBT CEASES TO EXIST – SATISFIED BY FORECLOSURE**

| DATE/EXHIBIT | DOCUMENT TYPE | FROM | TO | CLAIM |
|---|---|---|---|---|
| 7-6-2011 / Q | "Welcome" ltr announcing<br>transfer of loan servicing | ALS#2 & AB | Trevarthen | Debt exists, Transfer servicer<br>ALS#1 to AB effective<br>7-21-2011 |
| 2-9-2012 | Foreclosure Complete Reversal | ALS#1 | | |
| 2-9-2012 | MIN Information Update | ALS#1 | AB | AB = New Subservicer |
| 2-9-2012 | Foreclosure Complete | AB | | Foreclosure Complete<br>6-7-2011 |
| 6-15-2012 / N | Ltr transferring servicing rights | AB | Trevarthen | Nationstar has right to collect |
| 10-30-2013 / S | Declaration (Trompisz) | MERS & ALS#1 | The Court | ALS#1 = ALS#2; ALS#1<br>acquired by NS 6-29-2012 |
| 8-1-2014 / X | Declaration (Trompisz) | Nationstar | The Court | Nationstar acquired<br>"substantial amount" of<br>servicing rights |

No. 03-15-00011-CV

IN THE THIRD COURT OF APPEALS OF TEXAS

Clare Trevarthen
Appellant

v.

Nationstar Mortgage LLC; Auction.com; Pamela Cirkiel; Helen G.
Kinneman; Jeremiah McClain and Shamica Thomas
Appellees

Appeal from the District Court of Williamson County, TX
Trial Court No. 14-0187-C26

APPENDIX ITEM 15

ITEM 15     Allonge to Promissory Note

●                                              ●

**Meridias Capital Inc., A Nevada Corporation**
**990 WEST ATHERTON DRIVE**
**SALT LAKE CITY, UT 84123**
**Phone: 866-369-7755 Fax: 866-849-8083**

**ALLONGE TO PROMISSORY NOTE**

| | |
|---|---|
| Note | Meridias Capital Inc., A Nevada Corporation<br>LOAN #: 1400067296<br><br>AURORA LOAN SERVICES, INC<br>LOAN #. ALTA99 |
| Note Date | DECEMBER 27, 2006 |
| Note Amount | $136,000 00 |
| Borrowers· | CLARE TREVARTHEN |
| Subject Property· | 1202 MAHOGANY LANE<br>CEDAR PARK, TX 78613 |

---

Pay to the order of·

LEHMAN BROTHERS BANK FSB

without recourse

By·  _Calleane Wakefield_____

WAKEFIELD, CALLEANE
Assistant Vice President
Meridias Capital Inc , A Nevada Corporation